THE PEOPLE *ex rel.* John Peair

*v.*

THE BOARD OF EDUCATION OF UPPER ALTON SCHOOL DISTRICT.

*Filed at Springfield April 5, 1889.*

1.  SCHOOLS—*acts of superintendent as the acts of the board of education—as, in the assignment of pupils to the exclusion of colored children.* Where a board of education pass a resolution giving the principal or superintendent of the schools full power and authority to make assignment of pupils to such rooms as in his judgment may seem best for the welfare of the schools, his act in excluding colored children from a certain school will indirectly be the act of the board, and treated as their act.

2.  SAME—*colored children in the public schools.* By the statutes of the State, the duty of providing schools for the education of *all* children between the ages of six and twenty-one years in their district, is imposed on all boards of education; and the statute also provides, that in the performance of this duty they shall not exclude from such schools, directly or indirectly, any such children on account of color.

3.  On an issue whether a board of education had excluded colored pupils from one of its schools where white children of all grades were admitted, an instruction, that unless the jury believed, from the evidence, that the board had excluded the children named in the petition for *mandamus* from the public schools of the district, by a resolution, on account of color, they should find for the defendants, was held erroneous, as ignoring the fact whether such children were excluded from *any* of the schools. Under such instruction the jury could find for the relator only on proof that his children were excluded from *all* the public schools of the district.

4.  By another instruction given, the jury were told, that if they believed, from the evidence, that the board of education, in the exercise of a reasonable discretion, furnished to all of the children of the district of school age, facilities for a common school education, as in their judgment would best promote the education of the children and answer the purpose of the law, they should find for the defendants: *Held,* that by the instruction the requirements of the law were wholly ignored and the issue presented lost sight of.

5.  MANDAMUS—*who may be relator.* Any citizen of a school district may become relator in a proceeding by *mandamus* to compel those in charge of the public schools therein to admit any child or pupil who has been directly or indirectly excluded therefrom on account of color.

6. Where the object of the writ is the enforcement of a public right, the people are regarded as the real party, and the relator need not show that he has any legal interest in the result. It is enough that he is interested, as a citizen, in having the law executed and the right in question enforced.

7. SAME—*demand and refusal—whether necessary.* Where the duty sought to be enforced by *mandamus* is of a merely private nature, affecting only the right of the relator, a demand is necessary to lay the foundation for relief by *mandamus.* But if the duty, the performance of which is sought to be enforced, is a public duty, resting upon the respondents by virtue of their office, no such demand and refusal are necessary.

8. In respect to a public duty of members of a board of education or other public officers, the law itself stands in place of a demand, and the neglect or omission to perform the duty stands in the place of a refusal, for the purpose of enforcing the performance of the duty by *mandamus.*

9. SAME—*special findings by jury, inconsistent with general verdict.* On a petition for *mandamus,* special findings of the jury in response to questions of fact propounded to them, while not treated as special verdicts under the recent amendment to the Practice act, may be considered as findings of fact on the issues submitted, and when inconsistent with the general verdict, will prevail over the latter.

This was a proceeding by *mandamus,* commenced in this court by John Peair, against the Board of Education of Upper Alton school district.

This proceeding was begun by the relator, John Peair, at the January term of this court, 1888, to compel the respondents to admit his two children, Tony and Cora, to the high school building of Upper Alton school district, to be taught therein, with other children of the same grade, without discrimination, it being alleged in the petition filed, that said children had been excluded therefrom on account of their color. By the answer of respondents, and the replication thereto, an issue of fact was raised, for the trial of which the case was certified to the circuit court of Madison county. A trial by jury in that court resulted in a general verdict in favor of respondents; but there were also several special findings re-

turned, and these, with the general verdict, and a bill of exceptions containing all the evidence offered in the circuit court, have been certified back for our final determination of the cause.

It is averred in the petition, that the board of education of Upper Alton school district is a corporation existing under and by virtue of an act of the legislature of this State, approved February 15, 1865, and an amendatory act, approved March 29, 1869; that prior to 1886 said school board provided four school houses in said district, in three of which white children alone were admitted and taught, and in the other of which children of African descent, or colored children, only, were admitted and taught; that in 1885 and 1886 said board of education caused to be erected in said Upper Alton a public school building, commonly called a high school building, with ample room for the accommodation and instruction of all the children of said district, white and colored; that thereupon the three schools previously used for the white children were closed and discontinued, and that there is now no other common or free school in said district provided for white children than the high school building aforesaid, and all of said white children, whether in the primary, intermediate or high school grades, who desire so to do, are admitted by said board to said high school building, and all the grades of a common school education, primary, intermediate and high school, are taught therein to said white children according to their advancement in education; that on the 7th of October, 1886, said board passed a resolution, as follows:

"*Resolved*, first, that if, after submitting to the customary examination for admission of white pupils to the high school, any colored children shall be found to have attained the requisite standing, such colored children shall be admitted to the high school; second, that all the grades taught in the white schools below the high school, shall be taught in the colored school."

—But said board has ever refused, and still refuses, to admit any of the colored children of said district into said high school building, as pupils, unless sufficiently advanced to enter the high school grades; that relator is a colored man; that he now resides and has long resided in said Upper Alton, and is a taxpayer therein; that he has several children, two of whom are named, respectively, Tony Peair and Cora Peair, aged six and nine years, who now reside and ever have resided with relator; that neither of them is qualified to enter the high school grades taught in said high school building; that upon the opening of said building for the reception of pupils, all white children who presented themselves for admission to any of the grades to be taught therein, whether primary, intermediate or high school grades, were received into said building, and have been since taught therein; that upon the opening of said building for the reception of pupils, and again on October 27, 1886, and again on December 21, 1886, application was made at said building, to the principal in charge thereof, on behalf of said two children, for permission to attend school in said building, but such permission was refused by said principal, under orders from said board of education, for the reason that said children are colored, and for no other reason; that said board, as at present organized, is composed of Edward C. Lemen, Michael Low, Franklin Moore, Robert R. McReynolds and George Johnson, and that relator has applied to each member thereof to grant said relator's said two children permission to attend school in said high school building, but without success, but each of said members has refused such permission; that relator has requested the president of said board to call a meeting of said board for the purpose of granting said children admission to the schools taught in said high school building, but he refused to do so, upon the ground that the members of said board would not allow colored children to attend any school in said building below the high school grade, and that he and other members of said board advised relator to institute suit to test the ques-

tion as to whether the colored children of said district have the right to attend school in said building below the high school grade ; that he has used every means within his power, except legal proceedings, to obtain admission for his said children to said schools in said building, but without avail, etc., wherefore he prays a writ of *mandamus,* etc.

Respondents, by their joint answer, admit the existence of said board of education of Upper Alton school district, as alleged in the petition, and that prior to 1886 schools were located and conducted in said district as averred by the relator ; also, the erection of said high school building, and that upon the completion thereof the three schools previously used by white children were closed and discontinued, while that used by colored children was continued ; they aver that the separate school for colored children, prior to 1886, was erected, organized and maintained at the instance and because of the preference of relator and other colored citizens of said district that their children should be educated in a school separate from the white children ; they deny that there is no other common or free school for white children in said school district except the high school building, and aver that there are, and have been during the school years of 1886 and 1887, two common or free school houses kept open and maintained therein ; they deny that the high school building contains ample room for the accommodation of the school children, white and colored, in said district; they aver "that Professor George W. Powell is the duly appointed, qualified and acting principal or superintendent of said school district, and in charge of all the schools thereof; that the said board of education of said school district, on the 20th of August, A. D. 1886, at a regular meeting thereof, passed the following resolution : 'Professor Powell is given full power and authority to assign all pupils to such rooms as, in his judgment, he may deem best for the welfare of the school;' and pursuant to the authority of said resolution, the said Professor Powell assigned and apportioned

a part of the white children of said district to the school house formerly occupied and attended by the colored children of said district, and a part of the white children to the high school building; and defendants aver that in each of the said school houses the grades are the same, and the facilities for instruction entirely equal, below the high school grades, and that the school children of said school district, whether white or colored, are admitted into the high school grade on equal terms;" they admit that the children of relator, and other colored children of said district, made application, on the 27th day of October, 1886, and other days, to said Professor Powell, for permission to attend school in said high school building, and they aver that he, pursuant to the authority vested in him by virtue of the resolution passed by said board, requested and directed the children of relator to go and present themselves forthwith at the other said school building in said district, to be examined touching their qualification, so as to properly assign and apportion them to the different departments of said public graded school, as they should appear entitled to by virtue of such examination, and that relator's children neglected and refused to comply with such request; they deny that said children were refused permission to attend school in the high school building on account of their color, and for no other reason; they admit that said school board consists of the members named in the petition, but deny that relator applied to them for permission for said children to attend school in said building, and that each of them refused the same; and they deny that relator requested the president of said board to call a meeting of the same for the purpose of granting permission to said children to attend school at said building, and that said president refused, or assigned the reason stated in said petition for refusing to do so, or that he, or any member of said board, advised the bringing of suit to test the right of colored children to attend school at such building; they aver that the said board has met, in regular meeting, on the first Tuesday

in each and every month, during the school years of 1886 and 1887; that the place of said meetings was known to relator; that neither he, nor any one on his behalf, ever made a demand, directly or indirectly, on said board, for permission for said children to attend school in said high school building; they deny that said children have been or are now unlawfully excluded from the schools of the high school building below the high school grades, on account of their color, and they aver that said children, and all the other colored children of said district, refuse to submit to an examination for assignment and apportionment to the graded school of said district, and have declared they will not attend any other school than that in the high school building.

To this answer relator filed a replication, averring that the allegations of his petition are true, and denying all the averments therein by way of new matter.

The general verdict was, "We, the jury, find for the defendants." The special findings were in the form of answers to questions propounded to the jury at the instance of the relator. Those numbered 11, 18 and 19, in the record, are as follows:

"11. When application was made, on the opening of said high school building for reception of pupils, and on other days mentioned in the petition herein, to the principal in charge of said building, on behalf of relator's two children, for permission to attend school in said building, was such permission refused by said principal because said children were colored? Answer, Yes.

"18. Have not the children of relator, John Peair, been excluded from attending school in said high school building by the defendants on account of the color of said children? Answer, Yes.

"19. When the colored school children applied for admission to said high school building, and were directed by said George W. Powell to go to the colored school forthwith for examination, was it not the intention of said Powell to assign all of said

colored children to said colored school, and not to allow any of them to attend school in said high school building except such as might be sufficiently advanced to enter the high school grade? Answer, Yes."

To the several questions, Whether or not relator applied to the board for permission to send his children to said high school building?—Whether or not he applied to the president of the board to call a meeting of the same for the purpose of having it grant permission to his said children to attend school in said building?—Whether the president, or other members of said board, advised relator to bring suit to test his right to send his said children to said building to school?—Whether a committee of colored people of said district called upon said board between the 1st and 11th of December, 1886, to know whether or not colored children would be permitted to attend school at said high school building?—And whether or not S. P. Yerkes, a member of said board, addressed the colored people of said district, on the 11th of December, 1886, at a meeting of said colored people called in pursuance of notice from said board, and whether said Yerkes did not then inform said colored people that he was authorized by said board to tell them they could not send their children to school at said building, but must send them to the colored school, and if they got them in said high school building they would have to do it by law?— the jury, to each of such questions, returned their answer in the negative. To the question, Did Professor Powell, prior to the filing of relator's petition, assign a part of the white school children of said district to the school formerly occupied by the colored children?—they answered, Yes.

Messrs. WISE & DAVIS, for the relator:

Boards of education are prohibited from excluding, directly or indirectly, any child, of proper age, from any public school on account of the color of such child. Rev. Stat. chap. 122, sec. 105; *People* v. *Board of Education,* 101 Ill. 308.

The circuit court, notwithstanding the plain language of the statute, instructed the jury, that unless they believed, from the evidence, that the board of education excluded the children named from the public schools of the district by a resolution of said board, on account of color, passed and entered of record, the jury should find for the defendants. Under such pernicious instruction the jury could not do otherwise than return a general verdict for the defendants.

When it is understood that up to the time of the erection of the high school building there had been but one school in Upper Alton to which colored children were admitted, the following resolution of the board, passed October 7, 1886, has special significance:

"*Resolved*, first, that if, after submitting to the customary examination for admission of white pupils to the high school, any colored children shall be found to have attained the requisite standing, such colored children shall be admitted to the high school; second, that all the grades taught in the white schools below the high school shall be taught in the colored school."

This is nothing more or less than a resolution excluding colored children from the high school building on account of their color, in all cases when they are not sufficiently advanced to enter the high school.

Mr. A. W. HOPE, for the respondents:

The petition, which takes the place of the alternative writ, runs in the name of *John Peair* v. *Board of Education.* The writ must run in the name of the People. Addison on Torts, (Wood's ed.) sec. 1510, p. 769, and notes; *School Inspectors* v. *People*, 20 Ill. 530; *People* v. *Hatch*, 33 id. 134; *People* v. *Glann*, 70 id. 232; *People* v. *Board of Police*, 26 N. Y. 316.

The board is a corporation, and can only act in its corporate capacity at a meeting regularly called, when a quorum of the members are present. 1 Dillon on Mun. Corp. sec. 230.

There is nothing in the petition to show that the board was ever petitioned, or ever had this matter before them, or ever acted upon it.   *McManus* v. *McDonough*, 107 Ill. 103 ; *Commissioners* v. *Baumgarten*, 41 id. 254.

The petition should set forth the corporate acts or resolutions of the board, that the court may see what they are, and not merely the pleader's conclusions.   1 Dillon on Mun. Corp. notes to secs. 347, 348 ; 2 Addison, sec. 244, and note, p. 360, and note ;  High on Ex. Legal Rem. sec. 536.

The petition must show a clear right to the relief demanded. The material facts must be distinctly set forth, so that they may be admitted or traversed.   High on Ex. Legal Rem. sec. 537.

Great precision is required in the form and contents of the alternative writ.   High on Ex. Legal Rem. sec. 538 ; *Canal Trustees* v. *People*, 12 Ill. 254 ; *People* v. *Brooks*, 57 id. 142.

The petition fails to aver that the children of the petitioner have conformed to all of the reasonable rules and regulations prescribed, relative to admission to the schools of the district.

The board of education are clothed with large discretionary powers by virtue of the act of incorporation, judicial in their nature, and subject to be controlled by the courts only when abused.   Act of 1869, secs. 6, 7 ; *People* v. *Board of Education*, 101 Ill. 310.

The rule is, you have no right to provide educational facilities for the white man that you do not afford the negro.   See Cooley on Torts, 287, and authorities quoted in note ; *Chase* v. *Stephenson*, 71 Ill. 383 ; *People* v. *Board of Education*, 101 id. 308.

In *Chase* v. *Stephenson* it was held that a discrimination, under the law, meant a denial of equal facilities for instruction.   *People* v. *Board of Education*, 101 Ill. 315.

Mr. W. P. BRADSHAW, also for the respondents.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

On the principal question involved in this controversy, viz., did respondents exclude relator's children from the high school building of Upper Alton school district on account of color, the finding of the jury must be held to be adverse to respondents. The eighteenth special finding is directly and positively so, and the eleventh and nineteenth, to the effect that they were so excluded by the principal of said school, are so in effect. The resolution of respondents, August 20, 1886, set out in the answer, vested full power in said principal to assign all pupils in said district; therefore, what was done in that respect by the principal, was indirectly done by respondents. We think these special findings are supported by the evidence, and while they are not treated as special verdicts under the recent amendment to our Practice act, they are in this proceeding proper to be considered as findings of fact on the issues submitted to the jury. Even if the general verdict could be said to be a finding in respondents' favor on this branch of the case, it is so manifestly the result of misdirection by the court as to be entitled to no consideration.

. By one instruction, the jury are told that "unless you believe, from the evidence, that the board of education of Upper Alton excluded the children named in the petition from the public schools of Upper Alton, by a resolution of said board of education, on account of color, passed and entered of record, then you should find for the defendant." By the statute, it is made unlawful to exclude a child from *any* of the public schools of Upper Alton district on account of color. By the instruction, the jury could only find for relator on proof that his children were excluded from *all* the public schools of said district. By the statute, it is made unlawful to exclude a child from a public school on account of color, *either directly or indirectly;* but here the jury are told they must find for respondents unless they believe relator's children were excluded by a *resolution entered of record.*

By another of the series of instructions asked by and given on behalf of respondents, the jury was told: "If you believe, from the evidence, that the board of education, (defendants,) in the exercise of a reasonable discretion, furnished to all the children of Upper Alton school district, of school age, facilities for a common school education, as in their judgment would best promote the education of the children and answer the purpose of the law, the jury will find for the defendants." Here, again, the requirements of the statute are wholly ignored, and the issue presented by the pleadings entirely lost sight of. Under these instructions the jury could do no less than return a general verdict for defendants; but that verdict is no indication as to what view of the evidence they would have taken on the question now under consideration if they had been properly instructed, while the special verdicts do clearly show that the jury found, from the evidence, that relator's children had been excluded from said school by respondents on account of color.

A careful reading of all the evidence before us forces the conviction that it was the purpose of respondents to require the children of relator, and all other colored children of the district, to attend what had been known as the colored school building, and to exclude all colored children of the district, below the high school grade, from the high school building. Especially are we convinced that these children were practically excluded from the said high school building by the principal because they were colored children, and that respondents, though informed of that fact, took no steps to have them admitted.

But respondents maintain, that even though this principal question is resolved in relator's favor, still he can not have a peremptory writ of *mandamus*, because he has failed to show an express demand by him upon respondents that his children should be so admitted, and their refusal, before filing his petition. The jury has found, as is shown by the foregoing

statement of facts, that no such demand was made; therefore, if the position of respondents is legally correct, the general verdict must be sustained, and the prayer of the petition denied.

The argument in support of the proposition that a formal demand and refusal must be shown, is based upon the assumption that the duty here sought to be enforced is of a private nature, affecting only the right of relator, the law being, that in such case a demand is necessary to lay the foundation for relief by *mandamus.* If, on the contrary, the duty, the performance of which is sought to be enforced, is a public duty, resting upon respondents by virtue of their office, it is equally well settled that no such demand and refusal are necessary. (High on Ex. Legal Rem. sec. 41, and authorities cited.) The duty here sought to be enforced is not of a private nature, nor is the right demanded by relator merely an individual right, within the meaning of the rule announced. By the statutes of this State, the duty of providing schools for the education of *all* children between the ages of six and twenty-one in their district, is imposed upon respondents. The legislature has also, by express enactment, provided, that in the performance of that duty they shall not exclude from such schools, directly or indirectly, any such child on account of its color. The duty thus imposed upon respondents is incumbent upon them by virtue of their office. In such case it has been well said, "the law itself stands in the place of a demand, and the neglect or omission to perform the duty stands in the place of a refusal, or, in other words, the duty makes the demand, and the omission is the refusal."

Again, the right claimed by the relator is not merely a personal right. True, he may, and doubtless does in this particular case, have the peculiar interest of a parent in having his children admitted to a school in which he thinks they have a right to be taught; but after all, it is the public,—the community at large,—that is most deeply interested in the enforcement of this and all other laws enacted for the wise and humane

purpose of educating the children of the State. While it was natural and appropriate that the father should become the relator, we entertain no doubt that any citizen of the school district might, with equal right of law, have done so, and maintained the petition. In *County of Pike* v. *The People,* 11 Ill. 208, it is said: "Where the object is the enforcement of a public right, the people are regarded as the real party, and the relator need not show that he has any legal interest in the result. It is enough that he is interested, as a citizen, in having the law executed and the right in question enforced." See, also, *City of Ottawa* v. *The People ex rel.* 48 Ill. 240; *Hall et al.* v. *The People ex rel.* 57 id. 312; *Village of Glencoe* v. *The People,* 78 id. 390.

A formal demand and refusal were not necessary preliminary to the filing of the petition, and therefore the special findings of the jury on that question can have no controlling influence upon the general verdict or the decision of the case.

The powers of school boards to adopt and enforce rules for the management and government of schools, to assign pupils to the several schools in their districts, (making no distinction on account of color,) to expel pupils for disobedience or misconduct, or the proper exercise of discretionary power, are not called in question by this proceeding.

Adhering to the doctrine announced in *The People ex rel.* v. *Board of Education,* 101 Ill. 308, on the special findings of fact by the jury, the prayer of the petition is allowed, and a writ of *mandamus* ordered.

*Mandamus ordered.*