The State Board of Equalization *et al.*

*v.*

The People *ex rel.* Catharine Goggin *et al.*

*Opinion filed October 24, 1901.*

1. Taxes—*board of equalization acts as an original assessor of capital stock and franchises of corporations.* The State Board of Equalization, in assessing the capital stock and franchises of corporations, acts as an original assessor and not as a board of review.

2. Same—*duty of assessing capital stock and franchises is mandatory.* The duty resting upon the board of equalization to assess the fair cash value of the capital stock, including franchises, of corporations, over and above the assessed value of the tangible property of such corporations, is mandatory, and its performance may be compelled by *mandamus* when omitted or evaded.

3. Same—*assessment may be impeached because fraudulently made too low.* An assessment of property for taxation may be impeached where it has been fraudulently made at too low a rate.

4. Same—*when fraud in making assessment is established—mandamus.* Fraud on the part of the State Board of Equalization in assessing the capital stock and franchises of corporations is established, and its pretended assessments may be disregarded and the board be coerced by *mandamus* to make such assessments, where it is shown that the board has violated every well known rule for valuing such property, has refused to consider either the assessors' statements as to values or information furnished on the subject by interested parties, and has arbitrarily fixed the assessments at a grossly inadequate sum under rules passed by it for the occasion.

5. Same—*rule for valuing capital stock and franchises of corporations.* To ascertain the fair cash value of the capital stock of a corporation, including the franchise, the market or fair cash value of the shares of stock should be added to the market or fair cash value of the debt of the corporation, excluding indebtedness for current expenses, and if, from the sum so obtained, the equalized or assessed valuation of the tangible property of the corporation be subtracted, one-fifth of the remainder will be the net assessed valuation of the capital stock of the corporation, including the franchise, over and above the assessment of its tangible property.

6. Same—*board of equalization has power to assess omitted property when acting as an original assessor.* The modification of section 276 of the Revenue act by the Revenue act of 1898, by which the power of assessing omitted property is taken from the local assessor and conferred upon the board of review, does not apply to the State Board of Equalization when acting as an original assessor of the capital stock and franchises of corporations.

7. MANDAMUS—*adjournment of board does not remove it from the coercive power of the court.*   Adjournment of the State Board of Equalization pending an application for *mandamus* to compel it to assess omitted property does not take away the power of the court to enforce obedience to its writ of *mandamus*, subsequently issued, commanding the board to re-convene and assess such property.

8. SAME—*when demand and refusal to perform are unnecessary.*   In cases where the duty sought to be enforced by *mandamus* is of a public nature and there is no one empowered to demand its performance, the law imposing the duty stands as a continual demand, and there is no necessity for a specific demand and refusal.

9. PRACTICE—*on affirming judgment awarding mandamus Supreme Court need not fix date of return.*   On affirming a judgment awarding a writ of *mandamus* the Supreme Court need not fix the date when a return of the writ shall be made, since, under section 82 of the Practice act, the certified copy of the order of affirmance operates as a *procedendo* when filed, and the trial court becomes re-invested with jurisdiction and may proceed as if no appeal had been taken.

APPEAL from the Circuit Court of Sangamon county; the Hon. OWEN P. THOMPSON, Judge, presiding.

JOHN S. MILLER, and MERRITT STARR, (JOHN P. WILSON, of counsel,) for appellants.

I. T. GREENACRE, and E. S. SMITH, for appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

This is a petition for a writ of *mandamus*, filed in the circuit court of Sangamon county by the State's attorney of said county, upon the relation of Catharine Goggin and Robert C. Steele, against the State Board of Equalization and the members thereof, (naming them,) to coerce said board, and the members thereof, forthwith to value and assess, in the manner provided by law, the capital stock, including franchises, of each of the following named corporations: Chicago City Railway Company, West Chicago Street Railroad Company, North Chicago Street Railroad Company, Chicago Union Traction Company, People's Gas Light and Coke Company, Chicago Telephone Company, Chicago Edison Company, Chicago Consolidated Traction Company, Chicago Electric Tran-

191—34

sit Company, Chicago and Jefferson Urban Transit Company, Evanston Electric Railway Company, Cicero and Proviso Street Railway Company, North Chicago Electric Railway Company, North Side Electric Street Railway Company, Ogden Street Railway Company, Chicago North Shore Street Railway Company, Chicago Electric Traction Company, Chicago General Railway Company, South Chicago City Railway Company, General Electric Railway Company, Chicago West Division Railway Company, Chicago Passenger Railway Company, and North Chicago City Railway Company.

The petition alleges that on April 1, 1900, said corporations, and each of them, were duly organized under the laws of the State of Illinois, one of which was a gas company, one a telephone company, one an electric light company and each of the others a street railway company; that they were all located in and had tangible and intangible property subject to assessment and taxation in Cook county, Illinois; that the fair cash value of the capital stock, including franchises, of said corporations, over and above the assessed value of their tangible property, aggregated the sum of $235,000,000, and that said State board, and the members thereof, have refused to value and assess said capital stock, including franchises, as provided by law, and intend this year, as heretofore, not to value or assess said capital stock, including franchises, upon a basis of the fair cash value thereof, but intend to value and assess the same in such manner as to cause said corporations, and each of them, to pay no capital stock tax.

After a demurrer had been overruled to said petition, all the respondents, with the exception of Solomon Simon, who filed an answer confessing the same, filed joint and several answers thereto, admitting the existence and location of said corporations but denying that all of said corporations had tangible and intangible property in Cook county on April 1, 1900; averring that under

the law the State Board of Equalization, and none other, is vested with jurisdiction and power to value and assess the capital stock of said corporations; denying that the respondents had refused to value and assess the property of said corporations; averring that the State Board of Equalization was in session and had not completed its work at the time of the filing of the petition herein, and denying all other allegations contained in said petition and that the petitioner was entitled to the relief prayed for.   A replication having been filed and a jury waived, a trial was had before the court, and on May 1, 1901, a judgment was rendered by the court against the respondents awarding the writ of *mandamus* as prayed for, except as to the Chicago Electric Traction Company, the Chicago General Railway Company and the General Electric Railway Company, from which judgment an appeal has been prosecuted to this court.

It is first contended the action and judgment of the State Board of Equalization with respect to the existence or value of the property of the corporations in question are not subject to review by the courts.

The State Board of Equalization on the third day of December, and during the time intervening between the filing of the petition and the rendition of judgment, adjourned its session for the year 1900 without having valued and assessed at any amount the capital stock and franchises of thirteen of said corporations, and after having valued and assessed the capital stock and franchises of seven of said corporations at an amount so low, as is contended by the petitioner, as to amount, in law, to a fraudulent valuation and assessment, and therefore to amount to no assessment at all.   The question, therefore, presented here for our determination is, not whether the court has power to review the judgment of the State Board of Equalization in the fixing of values upon property assessed by it, but whether, when property has been wrongfully omitted which is taxable or fraudulently as-

sessed at so low a rate as to amount, in law, to no assessment at all, the court may compel said board to perform its duty by assessing said property.

Section 1 of article 9 of the constitution of 1870 (Hurd's Stat. 1899, p. 68,) provides: "The General Assembly shall provide such revenue as may be needful by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property—such value to be ascertained by some person or persons, to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise; but the General Assembly shall have power to tax   *   *   *   persons or corporations owning or using franchises and privileges, in such manner as it shall from time to time direct by general law, uniform as to the class upon which it operates."

Paragraph 4 of section 3 of chapter 120 (Hurd's Stat. 1899, p. 1394,) reads as follows: "The capital stock of all companies and associations now or hereafter created under the laws of this State except those required to be assessed by the local assessors, as hereinafter provided shall be so valued by the State Board of Equalization as to ascertain and determine respectively, the fair cash value of such capital stock, including the franchise, over and above the assessed value of the tangible property of such company or association; such board shall adopt such rules and principles for ascertaining the fair cash value of such capital stock, as to it may seem equitable and just, and such rules and principles when so adopted, if not inconsistent with this act, shall be as binding and of the same effect as if contained in this act, subject however, to such change, alteration or amendment as may be found from time to time, to be necessary by said board: *Provided*, that in all cases where the tangible property or capital stock of any company or association is assessed under this act, the shares of capital stock of such company or association shall not be assessed or

taxed in this State.   This clause shall not apply to the capital stock, or shares of capital stock of banks organized under the general Banking laws of this State or under any special charter heretofore granted by the legislature of this State:   *Provided, further,* that companies and associations organized for purely manufacturing purposes or for the mining and sale of coal, or printing or for publishing of newspapers or for the improving and breeding of stock, shall be assessed by the local assessors in like manner as the property of individuals is required to be assessed."

Paragraph 1 of said section 3 (Hurd's Stat. 1899, p. 1393,) provides: "All personal property, except as herein otherwise directed, shall be valued at its fair cash value;" and section 108 of said chapter (Hurd's Stat. 1899, p. 1412,) provides:   "The State Board of Equalization shall assess the capital stock of each company or association, respectively, now or hereafter incorporated under the laws of this State, in the manner hereinbefore in this act provided.   The respective assessments so made (other than of the capital stock of railroad and telegraph companies) shall be certified by the Auditor, under direction of said board, to the county clerk of the respective counties in which such companies or associations are located, and said clerk shall extend the taxes for all purposes on the respective amounts so certified the same as may be levied on the other property in such towns, districts, villages or cities in which such companies or associations are located."

By virtue of said constitutional provision and sections of the statute, the State Board of Equalization, in assessing the capital stock and franchises of corporations, does not act as a board of review but as an original assessor, and the duty resting upon said board to value and assess the fair cash value of the capital stock, including the franchises, over and above the assessed value of the tangible property of all companies and associations now or

hereafter created under the laws of this State, except those required to be assessed by the local assessors, is mandatory, and the performance of such duty, when omitted or evaded, may be enforced by *mandamus.*

Section 32 of chapter 120 (Hurd's Stat. 1899, p. 1400,) provides that all corporations and associations incorporated under the laws of this State, other than banks organized under any special or general laws of this State, and the corporations required to be assessed by the local assessors, shall, in addition to other property required to be listed, make out and deliver to the assessor a sworn statement of the amount of their capital stock, setting forth particularly the name and location of the company or association; the amount of capital stock authorized and the number of shares into which such capital stock is divided; the amount of capital stock paid up; the market value, or if no market value, then the actual value of the shares of stock; the total amount of all indebtedness except the indebtedness for current expenses, excluding from such expenses the amount paid for the purchase or improvement of property, and the assessed valuation of all its tangible property. Such statement shall be made in conformity to the instruction and upon forms to be prescribed by the Auditor of Public Accounts; and in case of a failure or refusal of any person, officer, company or association to make such return or statement, it is made the duty of the local assessor to make such return or statement from the best information he can obtain. By section 33 of the same act the assessor is required to return such statement to the county clerk, the county clerk is directed to forward such statement to the Auditor of Public Accounts, and the Auditor is required, annually, on the meeting of the State Board of Equalization, to lay before said board the statements required to be returned to him, and said board is required to value and assess the capital stock of such companies or associations in the manner provided by said act.

Eighteen of the corporations named in said petition, including the thirteen whose capital stock the State Board of Equalization failed to assess, failed to make such returns for the year 1900, as is directed by said statute, whereupon the statements as to them were made by the board of assessors, as required by law, and returned to the county clerk of Cook county, by him forwarded to the Auditor of Public Accounts and by him laid before the State Board of Equalization at its annual meeting, and were in its possession long prior to the time of filing the petition herein.   On October 17, at a meeting of the State Board of Equalization, there was read in open session a communication which it and each member thereof had before that time received, relating to the capital stock valuations of the corporations named in said petition, including the thirteen companies whose capital stock it failed to assess, which was as follows:

"*Oct. 8, 1900.*

"*To the honorable members of the State Board of Equalization of the State of Illinois:*

"GENTLEMEN—The undersigned, the tax investigating committee of the Chicago Teachers' Federation, herewith present to you a memorandum of information compiled by said committee.   We believe the information to be correct, and are ready to produce before your honorable body, or its proper committee, evidence to support the statements made.

"The twenty-three companies named paid no capital stock tax for last year.   We trust they may this year be compelled to pay what is just.   Their capital stock and bonds are valued at $268,108,312.   The tangible property of fourteen of these companies has an assessed value of $5,676,032.   The assessed valuation of the tangible property of the remaining nine companies is estimated at $779,717.   Estimated value of total tangible property is $6,455,794.   The full value is five times that sum, or $32,278,745, leaving the valuation of intangible property subject to capital stock tax, $235,829,567.   We respectfully request that your board value and assess the capital stock of such companies in the manner provided by law.

"Respectfully,      CATHARINE GOGGIN,

(Seal.)                          MARGARET A. HALEY,

*Tax Investigating Com. Chicago Teachers' Federation.*"

The evidence shows that said Catharine Goggin and Margaret A. Haley, as the representatives of the Chicago. Teachers' Federation, had frequently pointed out to the board and the members thereof, and especially the committee on assessment of capital stock of corporations, that the assessments as made for previous years by the State Board of Equalization permitted said corporations to escape taxation on their capital stock, including franchises, and urged upon the board and its members that the same be assessed for the year 1900. It further appears from the statements prepared by the board of assessors, and which had been laid before the board by the Auditor, and from evidence collected by the relators and offered to be submitted to the State Board of Equalization by said relators, and which is uncontradicted, that the value of the capital stock and franchises, including the bonded indebtedness, exclusive of the assessed tangible property of the thirteen corporations which the board totally failed to assess for the year 1900, amounted to approximately $85,000,000, and that said omitted companies earned during the year prior to April 1, 1900, a guaranteed dividend of from six per cent to thirty-five per cent per annum upon their stock, mainly in the form of rents received from leases of their rights and privileges to use the streets of the city of Chicago, to other corporations.

The only reason assigned by the respondents as an excuse for omitting said thirteen corporations from the list of corporations assessed by them is to be found in the statement of their counsel that the property of eight of said corporations had been assessed to the Chicago Consolidated Traction Company, and that in making the assessment of the property subject to taxation of said Consolidated company they had included the property of said eight corporations, and that the property of five of said corporations had been assessed to the Chicago Union Traction Company, and that in making the assess-

ment of the property subject to taxation of said Chicago Union Traction Company they had included the property of said five corporations. No evidence was introduced to support the claim of counsel and such claim is disproved by the record. The net assessment of capital stock and franchises of the Chicago Consolidated Traction Company over and above its tangible property, as assessed by the local assessors, was fixed by the State board at $100,000 while that of the Chicago Union Traction Company was fixed at $600,000, which, according to the contention of counsel for respondents, would make the net total assessable cash value of the capital stock and franchises of said thirteen omitted companies and said Chicago Consolidated Traction Company and Chicago Union Traction Company aggregate the sum of $700,000, while the uncontradicted evidence establishes beyond doubt that the cash value of the capital stock of the Chicago Consolidated Traction Company and the Chicago Union Traction Company, together with their bonded indebtedness after deducting therefrom the assessed value of their tangible property, alone exceeds that amount by a large sum. It therefore clearly appears that the capital stock and franchises of said thirteen omitted companies, as a matter of fact, were not valued and assessed by said State Board of Equalization to said several corporations, nor were the same included in the assessment of said traction companies, but that the same were wholly omitted from the assessment of 1900.

We have repeatedly held that an assessment may be impeached on the ground that property has been fraudulently assessed at too high a rate. In *Pacific Hotel Co.* v. *Lieb*, 83 Ill. 602, we say (p. 609): "Where * * * the valuation is so grossly out of the way as to show that the assessor could not have been honest in his valuation —must reasonably have known that it was excessive—it is accepted as evidence of a fraud upon his part against the tax-payer, and the court will interpose." And in *Chi-*

*cago, Burlington and Quincy Railroad Co.* v. *Cole*, 75 Ill. 591, (on p. 594): "Valuations must be the result of honest judgment, and not of mere will." The converse of the proposition must be true, and an assessment may be impeached where the assessment has been fraudulently made at too low a rate. Of the seven corporations which were assessed at some amount, the People's Gas Light and Coke Company was one. That company filed with the Auditor a statement, which was sworn to by its secretary, on the 17th day of November, 1900, and after the commencement of this suit. This statement was laid before the State Board of Equalization by the Auditor at the time the property of said corporation was assessed. The statement showed the amount of capital stock paid up to be $28,668,800, the amount of indebtedness to be $34,000,000 and the total value of the tangible property to be $15,526,785. The aggregate amount of the value of the capital stock and the indebtedness, less the tangible property, amounted to $47,142,015, one-fifth of which would be $9,428,403, and was the amount, under the law, which should have been certified to the county clerk of Cook county, on which said clerk should have extended the taxes of said corporation on the basis that its stock was worth par. The evidence showed, however, the same to be worth $106.50 per share, which fact should have materially increased its assessment. The amount, however, assessed against said company by the State Board of Equalization was $450,000, or $8,978,403 less than the company's own statement, subscribed and sworn to by its own secretary, showed to be the amount for which it should have been assessed. The assessment of this corporation is a fair illustration of the assessments made by the State Board of Equalization against the other six companies which it assessed.

It was the duty of the State Board of Equalization to assess the capital stock, including the franchises, of said corporations at the fair cash value thereof. Instead

of doing so, the respondents arbitrarily and willfully failed to follow a proper and long established rule in force in this State for making such assessments, by refusing to take into consideration, in making such assessments, the bonded indebtedness of said corporations. They also disregarded all other rules for the making of such assessments in force at the time of the filing of this petition, and for the purpose of evading their duty sought to pass new rules for their government in making said valuations and assessments, and refused to consider the information then before them, furnished to them by the assessors, as provided by statute, and assessed the capital stock and franchises of said corporations at a nominal sum, instead of at the fair cash value thereof. While it is true that fraud will not be presumed and that the decision of the State Board of Equalization in fixing the value of corporate property for the purpose of taxation is *quasi* judicial in its nature, still, when it is apparent to the court that every well known rule for the valuation of capital stock, including franchises, has been violated and arbitrarily disregarded by the board, and such board has refused to consider the statements as to values prepared by the assessors, under the statute, for its use, and has refused to consider information as to the value of such corporate property submitted to it by interested parties, and has arbitrarily fixed such assessments at a grossly inadequate sum under rules passed by it for the occasion, the court is justified in holding that fraud in the making of such assessments has been established, and such pretended assessments may be properly disregarded and treated as no assessment, and such board be coerced by the writ of *mandamus* to assess such property.

It is next contended that the respondents were not in default at the time the petition was filed; that the State Board of Equalization was then in session and had the entire session in which to value and assess the capital stock and franchises of said corporations, and that the

petition for *mandamus* was therefore prematurely filed. The general rule is, that before applying for a *mandamus* an express demand should be made, and there should be a refusal to perform, either express or implied. In cases, however, where the duty sought to be enforced is of a public nature, affecting the people at large, and there is no one especially empowered to demand its performance, there is no necessity for a demand and a refusal. The law requiring the duty stands as a continual demand. (13 Ency. of Pl. & Pr. 618; *People* v. *Board of Education,* 127 Ill. 613; *People* v. *Town of Mt. Morris,* 137 id. 576; *People* v. *Crabb,* 156 id. 155; *Comrs. of Highways* v. *Jackson,* 165 id. 17.) The State Board of Equalization met on the 10th day of September. On the 11th day of October the board, and each member thereof, were requested, in writing, to value and assess the capital stock and franchises of said corporations. Thereafter, and prior to the filing of the petition, the board did nothing toward the performance of its duty, and some of its members stated nothing would be done. Thirteen of said corporations were not assessed at all, and on the day the board adjourned its annual session seven were assessed at so low a rate as to amount to no assessment. The duty to assess the capital stock and franchises of said corporations rested upon the respondents from the first day of the session of the board, and continued from day to day throughout the session. Such duty could not be escaped by delay, and such delay and subsequent failure to act show conclusively that respondents were willfully in default from the beginning of the session to its close. We are therefore of the opinion that no further demand and refusal than was shown by the evidence was required prior to the filing of the petition.

It is further contended that the court should have declined to grant the writ because it appeared at the hearing that the State Board of Equalization had then adjourned its annual session, and it is said the court

could then see that the writ would be wholly without practical results, as the court would be powerless to enforce obedience thereto. The law is well settled that the termination of the office of a respondent in *mandamus* proceedings does not abate the writ, and that the proceedings may be continued against his successor in office without beginning *de novo.* (13 Ency. of Pl. & Pr. 756; *People* v. *Supervisor*, 100 Ill. 332.) Section 8 of the Mandamus act (Hurd's Stat. 1899, p. 1136,) provides that "the death, resignation or removal from office, by lapse of time or otherwise, of any defendant, shall not have the effect to abate the suit, but his successor may be made a party thereto and any peremptory writ may be directed against him."

In the case of *People* v. *Supervisor, supra,* a peremptory writ of *mandamus* had been awarded against the supervisor of a town, commanding him to execute, in behalf of the town, certain bonds to the relator. Such supervisor had not obeyed the command of the writ at the time his term of office had expired, and application was made for an *alias* peremptory writ against his successor in office to compel him to perform the acts which his predecessor in office had been by the first writ ordered to perform. The writ was granted, and the court, on page 334, say: "It is but asking for the repetition of the writ against the same party, represented by another person.   *   *   * Where a continual and perpetual duty is incumbent upon certain public officers, the fact that the officers hold their tenure by annual elections will not prevent the court from interfering, since the duty, being continuing in its nature, may be enforced against the officers generally, and their successors."

The State Board of Equalization is created by the Revenue act, and the provisions of said act, so far as applicable, apply to said board. Sections 276 and 277 of said act (Hurd's Stat. 1899, p. 1441,) make provision for

the assessment of omitted property and the subsequent extension and collection of the taxes thereon, and are as follows:

"Sec. 276. If any real or personal property shall be omitted in the assessment of any year or number of years, or the tax thereon, for which such property was liable, from any cause has not been paid, or if any such property, by reason of defective description or assessment thereof, shall fail to pay taxes for any year or years, in either case the same, when discovered, shall be listed and assessed by the assessor and placed on the assessment and tax books. The arrearages of tax which might have been assessed, with ten per cent interest thereon, from the time the same ought to have been paid, shall be charged against such property by the county clerk. It shall be the duty of county clerks to add uncollected personal property tax to the tax of any subsequent year, whenever they may find the person owing such uncollected tax assessed for any subsequent year."

"Sec. 277. If the tax or assessment on property liable to taxation is prevented from being collected for any year or years, by reason of any erroneous proceeding or other cause, the amount of such tax or assessment which such property should have paid may be added to the tax on such property for any subsequent year, in separate columns designating the year or years."

While we have held section 276 was modified by the Revenue law of 1898, (*People* v. *Sellars,* 179 Ill. 170,) so that the power to assess omitted property was taken from the local assessor and conferred upon the board of review, said section was not repealed, and such modification does not apply to the State Board of Equalization when acting as an original assessor of the capital stock and franchises of corporations, and said State board may still make the assessment of omitted capital stock and franchises of corporations under said section. We are therefore of the opinion that the writ can be obeyed, and

that there is no force in the contention that it would be wholly without practical results.

The trial court, upon behalf of the petitioner, held the following propositions of law, to which holding the respondents excepted:

"The court holds that in making the assessment of the capital stock of corporations, including the franchise, it is proper for the board to add the market or fair cash value of the shares of stock, and the market or fair cash value of the debt of the corporation, excluding the indebtedness for current expenses, and to take the aggregate amount so ascertained as the fair cash value of the capital stock, including the franchise, and to take therefrom the equalized or assessed valuation of the tangible property of the corporation, and one-fifth of the remainder would be the net assessed valuation of the capital stock of such corporation, including the franchise, over and above the assessment of its tangible property."

Also: "The court holds that the so-called rules adopted by the State Board of Equalization on the 22d day of November, 1900, do not present a correct and lawful method of determining the assessed valuation of the capital stock of corporations, including the franchise, over and above the equalized or assessed valuation of the tangible property."

Paragraph 4 of section 3, chapter 120, (Hurd's Stat. 1899, p. 1394,) provides the State Board of Equalization "shall adopt such rules and principles for ascertaining the fair cash value of such capital stock, as to it may seem equitable and just, and such rules and principles, when so adopted, if not inconsistent with this act, shall be as binding and of the same effect as if contained in this act, subject however, to such change, alteration or amendment as may be found from time to time, to be necessary by said board." In pursuance of the authority thus conferred, said board in the year 1873 adopted rules for its government in the assessment of the capital stock

and franchises of corporations. Said rules were amended in 1889, and thereafter remained in force until after the commencement of this suit, and are as follows:

"*Resolved,* That for the purpose of ascertaining the fair cash value of the capital stock, including the franchise, of all companies or associations now or hereafter created under the laws of this State, and for the assessment of the same, or so much thereof as may be found to be in excess of the assessed or equalized value of the tangible property of such companies and associations, respectively, we, the State Board of Equalization, hereby adopt the following rules and principles, viz.:

"*First*—The market or fair cash value of the shares of capital stock and the market or fair cash value of the debt to be determined by reference to the Stock Exchange or the books of said corporations; and the returns made to the State board, or other means, (excluding from such debt the indebtedness for current expenses,) shall be combined or added together, and the aggregate amount so ascertained shall be taken and held to be the fair cash value of the capital stock, including the franchise, respectively, of such companies and associations.

"*Second*—From the aggregate amount ascertained, as aforesaid, there shall be deducted the aggregate amount of the equalized or assessed valuation of all tangible property, respectively, of such companies and associations (such equalized or assessed valuation in each case, if any, shall be taken and held to be the amount and fair cash value of the capital stock, including the franchise,) which this board is required by law to assess, respectively, against companies and associations now or hereafter created under the laws of this State."

On the 22d day of November, and immediately following the overruling of respondents' demurrer to the petition filed herein, the State Board of Equalization passed a new set of rules for its government in the assessment of the capital stock and franchises of corporations, which are as follows:

"*Resolved,* That for the purpose of ascertaining the fair cash value of the capital stock, including the franchise, of all companies and associations now or hereafter created under the laws of this State, and for the assessment of the same, or so much thereof as may be found to be in excess of the assessed or equalized value of the tangible property of such companies

and associations, respectively, we, the State Board of Equalization, hereby adopt the following rules and principles, viz.:

"*First*—The capital stock of each said company or association shall be valued as an entirety, due consideration being given to the following propositions: (*a*) To the character and duration of the franchise of said company or association; (*b*) to the amount of the contribution (if any) demanded of and paid by said company or association, under the provisions of any contract or ordinance, to any municipality, as compensation for the use of its franchise privileges in said municipality; (*c*) the highest and lowest quotations of the shares of stock of said company or association during the twelve months immediately preceding the date of assessment, and the number of shares of stock sold at such quotations; (*d*) any other fact or condition or circumstance that will assist in arriving at a just, equitable, fair cash value of said capital stock.

"*Second*—From the aggregate amount ascertained, as aforesaid, there shall be deducted the aggregate amount of the equalized or assessed valuation of all the tangible property, respectively, of such companies and associations, wherever the same may be located, (such equalized or assessed valuation of its Illinois property being taken, in each case, as the same may be determined by the equalization or assessment of property by this board,) and the amount remaining, in each case, if any, shall be taken and held to be the amount and fair cash value of the capital stock, including the franchise, which this board is required by law to assess, respectively, against companies and associations now or hereafter created under the laws of this State.

"*Third*—The above and foregoing are declared to be the only existing rules and principles adopted by this board for its government in the assessment of the capital stock of companies or associations."

The State Board of Equalization has power to pass such rules for ascertaining the fair cash value of the stock of corporations, including franchises, as it may deem equitable and just, provided such rules are not inconsistent with the constitution or the Revenue act. The purpose of such rules is to provide, so far as possible, a certain and uniform method of ascertaining the fair cash value of the capital stock, including franchises, sought to be assessed. In furtherance of that object the rules in

191—35

force at the time the petition herein was filed were passed soon after the constitution of 1870 went into effect, and were in full force at the time of the commencement of this suit. They are well adapted to produce the result desired, and have not only been uniformly applied by preceding State Boards of Equalization, but have met the approval of this court as well as the Supreme Court of the United States, and the method pointed out therein for assessing capital stock and franchises would be a proper one for the board to follow even though no rules had ever been formally passed by the board adopting said method.

In *Porter* v. *Rockford, Rock Island and St. Louis Railroad Co.* 76 Ill. 561, the court, speaking by Mr. Justice SCHOL-FIELD, said (p. 588): "It is argued that, by adopting this mode of valuation, the board assessed the corporation upon the value of the debts which it owes, and which are not, in any sense, its property. We are not to assume that this was done, as it is not enjoined by the Revenue act, and would be in clear violation of the duty imposed on the board. It appears from the resolutions that the object was to assess the capital stock and franchises of corporations as is directed by the fourth clause of the third section of the Revenue act, and the assessment is, in fact, on the capital stock, including the franchise. The averment in the bill in this respect is contradicted by the exhibit. There is a seeming injustice in taxing corporations which are largely indebted and whose earnings are insufficient to pay the accruing interest, as is alleged to be the fact in the present case, to the full extent of the value of all their property and privileges, without regard to their indebtedness; yet it has never been the policy of the legislature to make any discrimination in favor of individuals on this account, and corporations cannot claim an exemption from taxation when, under like circumstances, an individual would not also be exempt to the same extent. The mode of valuation

adopted by the board of equalization assumes, first, that the value of the aggregate shares of capital stock is equal to the value of all the property, including the franchise, belonging to the corporation, when it is not indebted; second, that when the corporation is indebted the indebtedness proportionally reduces the value of the shares of capital stock; third, that the value of the debt is determined by the value of that belonging to the corporation from which its payment can be enforced, so that, however great the nominal amount of the debt, its actual value can never exceed that sum.   To illustrate:  Where a corporation is free from debt and the aggregate value of its shares of stock is, say, $150,000, it is assumed that the value of its capital stock, including its franchise, is $150,000.   If the same corporation, still retaining the same property, is, however, indebted $50,000, this will reduce the aggregate value of its shares of stock to $100,000, but as the law does not exempt corporations or individuals from the payment of taxes on account of indebtedness it would not be accurate to tax the corporation at this amount, because to do so would be to exempt it to the extent of its indebtedness.   To ascertain, therefore, what would be the aggregate value of its shares of stock if the corporation were free from debt, it is necessary to add the value of the debt to the value of the shares of stock.   If the corporation is, in the given case, indebted $150,000, the shares of stock will be worth nothing but the value of the debt will be $150,000, which is the value of that from which its payment can be enforced; and so, if the corporation is indebted in any greater sum, the value of the debt will still be only $150,000."

In *Pacific Hotel Co.* v. *Lieb*, 83 Ill. 602, the same learned justice, on page 610, says: "The words 'capital stock,' as used in the Revenue law, we have held in *Porter* v. *Rockford, Rock Island and St. Louis Railroad Co.* 76 Ill. 561, and in other subsequent cases where the question has been before us, mean the property belonging to the

corporation; and we have also held in those cases that it was designed by the law that all that belongs to the corporation as its property, whether tangible or intangible and of whatever nature or kind, should be valued, under this designation, for the purpose of taxation. The assessed valuation of the tangible property is deducted to avoid double taxation, and when this is done the residue apparently represents only the valuation of the intangible property. But this is only apparently so, for in reality it may represent also tangible property not represented by the valuation deducted. If there be property belonging to the corporation which adds to the value of the shares of stock and the value of the debts of the corporation, and which has been omitted in the assessment of the tangible property, it, as well as the intangible property, would be represented in the balance remaining after deducting the assessed value of the tangible property. So, also, this balance might represent an excess over the assessed value of the tangible property should it be assessed at a less sum than is represented as its value, in connection with the franchise, by means of the value of the shares of stock or the value of the debts. The double valuation being avoided, however, by the deduction of the assessed valuation of the tangible property, the corporation suffers no injustice whether the balance entirely represents the value of intangible property, or whether it also, in part, represents the value of the tangible property. The object is to reach the capital stock or property of the corporation as an entirety,—the tangible and intangible values combined."

And in the *Tax cases*, reported in 2 Otto, 575, Mr. Justice Miller, speaking for the court, says: "It is * * * obvious that when you have ascertained the current cash value of the whole funded debt and the current cash value of the entire number of shares, you have, by the action of those who above all others can best estimate it,

ascertained the true value of the road,—all its property, its capital stock and its franchises,—for these are all represented by the value of its bonded debt and of the shares of its capital stock."

In the first proposition of law above set forth, the holding of the court was to the effect that in making the assessment of the capital stock of corporations, including franchises, it is proper to add the market or fair cash value of the capital stock to the market or fair cash value of the debt of the corporation, (excluding from such debt the indebtedness for current expenses,) and to deduct from the result the aggregate amount of the equalized or assessed valuation of all the tangible property of said corporation, and one-fifth of the remainder would be the net assessed valuation of the capital stock, including franchise, over and above the assessment of its tangible property. The method thus pointed out of obtaining the cash value of the capital stock, including franchises, of corporations for the purpose of taxation has been in force in this State for many years, and has been approved by the courts, both State and national, and was a proper rule for the board to follow in assessing the capital stock, including franchises, of corporations for the purpose of taxation. We are of the opinion the court did not err in holding said proposition to fairly state a rule of law applicable to this case.

The second proposition challenges the method provided in the rules adopted on the 22d day of November, 1900, for obtaining the fair cash value of capital stock, including the franchises, over and above the equalized or assessed valuation of the tangible property, for the purposes of taxation. Such rules entirely eliminate from such consideration the indebtedness of the corporation to be taxed. This should not be done, as the cash value of the capital stock, including franchises, of a corporation cannot be obtained without taking into consideration the element of debt. They also provide that the

amount paid to any municipality as compensation for the use of its franchise privileges in such municipality shall be taken into consideration. Such outlay is but a current expense, and should no more be taken into consideration in determining such question of value than interest or labor. The rules adopted on the 22d day of November are declared to be the only existing rules and principles in force for the government of the board in making the assessment of the capital stock of companies or associations. There should therefore have been included within their terms everything necessary to be considered by the board in order that a correct valuation might be reached, and there should have been included within their terms no element which was not proper for the board to consider in making such assessment. As they exclude the question of the debts of the corporation from the consideration of the board and provide that items of mere current expenses shall be taken into consideration in making such estimate, they do not present a correct and lawful method of determining the assessed valuation of the capital stock of corporations, including the franchises, over and above the equalized or assessed valuation of the tangible property, and the court did not err in holding said proposition to be the law.

The respondents submitted sixteen propositions in writing, which the court was asked to hold as the law of this case. The court held six and refused ten of said propositions. The propositions held by the court upon behalf of the petitioner and the relators we think fairly stated the law of this case, and the court committed no error in holding or refusing to hold propositions of law.

It is urged by counsel for the respondents, with great earnestness, that there is no evidence in this record to sustain the judgment. The evidence offered on behalf of the petitioner, when considered alone, in our judgment fully sustains the findings and judgment of the trial court. To meet the case made by the petitioner the re-

spondents introduced no evidence, their insistence being that the petitioner had failed to make a case; that the petition was prematurely filed; that the judgment was rendered too late, and that, in any event, the court was without jurisdiction to review the action of the State Board of Equalization or to coerce it by writ of *mandamus*. This is a civil suit, and the members of the board were competent witnesses, and if it were true that the capital stock, including franchises, of said corporations were about to be or had been fairly and honestly valued and assessed, it would have been an easy matter for them to have explained to the court the methods pursued by them in reaching the results which they obtained, and to have shown to the court that such results were proper and legal. The respondents, however, saw fit to rest their case upon the law and to entirely ignore the facts, and we are of the opinion that the court, upon this record, not only properly held the law, but also the facts, against them.

It is further contended that the judgment of the court awarding the writ is too general, and therefore void. The order and judgment of the court, omitting the formal part, is as follows: "And it is further considered and directed by the court that you, the said State board, and the members thereof, be and you are hereby commanded to convene forthwith at the capitol building, in the county of Sangamon, and that you there forthwith value and assess the capital stock, including the franchise, of each of said companies herein named, as of April 1, 1900, in the manner provided by law, so as to ascertain and determine, respectively, as to each of said corporations, the fair cash value of its capital stock, including its franchise, over and above the assessed value of the tangible property of such company, for the year 1900. And it is further ordered that in arriving at such valuations and assessments of the capital stock, including the franchises of said companies hereinbefore named, said board,

and each member thereof, shall, from the best information obtainable by it and them, ascertain and take into consideration, among other things, as to each said corporation as the same was on the first day of April, 1900, the market value, or if no market value, then the fair cash value, of its shares of stock and the total amount of all its indebtedness, except the indebtedness for current expenses, excluding from such expenses the amount paid for the purchase or the improvement of property and the assessed or equalized valuation of all tangible property of said corporations, respectively, on said April 1, 1900. And you are further commanded to direct the respective assessments so made to be certified by the said Auditor of Public Accounts to the county clerk of Cook county, that the taxes for all purposes thereon may be extended by said clerk for the year 1900. You are further commanded to make return to this court on the 12th day of June, A. D. 1901, in what manner you have complied with this order." The court does not, by its said order and judgment, undertake to control the discretion or judgment of the respondents in the valuation or assessment of the capital stock, including the franchises, of said corporations. It only lays down the rules of law which govern and the methods which should be pursued by the respondents in making such valuation and assessment. This we think proper.

We have been asked by the petitioner to fix the date when a return to the writ should be made. Such order is not necessary. Under section 82 of the Practice act, upon filing in the trial court a certified copy of the order of affirmance the same will operate as a *procedendo*, and that court will become re-invested with jurisdiction, and may proceed as though no appeal had been taken. *Smith* v. *Stevens*, 133 Ill. 183.

Finding no reversible error in this record the judgment of the circuit court will be affirmed.

*Judgment affirmed.*