THE PEOPLE *ex rel.* John H. Dunham

*v.*

JAMES MORGAN *et al.*

1. PARK COMMISSIONERS—*statute authorizing vacancies to be filled by circuit judge not unconstitutional.* The authority conferred by the statute on the judge of the circuit court of Cook county to fill vacancies in the offices of the South Park Commissioners, was not in violation of the constitution of 1848, or of any provision of the present constitution, and an appointment to fill such a vacancy, by each and every of the judges of the circuit court of Cook county, is valid and legal.

2. CONSTITUTIONAL LAW—*prohibition of one branch of the government from performing duties of another.* The constitutional provision dividing the powers of the State government into three departments, and prohibiting one branch from exercising any power properly belonging to either of the others, except as is therein permitted, is general and does not define what acts may be performed by each department. That instrument has no provision which, in terms, declares that the appointment of municipal officers shall be exercised by one or another department, nor whether such appointment is the exercise of legislative, executive or judicial power. Such power seems to be only ministerial and may be conferred on persons holding judicial offices.

3. SAME—*power to levy taxes does not pertain to the executive or judicial department.* Under the constitutional provision distributing the powers of the government, neither the executive department nor judicial department can levy and collect municipal taxes, but the legislature may confer that power upon such corporate bodies, and may vest the power directly in the corporate

authorities chosen by the people, or may, in creating the municipality, confer the power on authorities to be appointed by some other functionary or individual, and submit the charter to the people, and if they adopt the same, that will be an assent by the people that such functionary may appoint the corporate authorities for their government.

4. When the people of a municipality, by vote, adopt a charter which provides for filling vacancies in the municipal authorities by a judge of the circuit court, such appointees will have the power to assess, levy and collect taxes for municipal purposes as provided in the charter, and there is nothing in the constitution prohibiting a circuit judge from making such appointments.

APPEAL from the Criminal Court of Cook county; the Hon. SAMUEL M. MOORE, Judge, presiding.

Mr. LUTHER LAFLIN MILLS, Mr. JAMES P. ROOT, and Mr. E. J. WHITEHEAD, for the appellants.

Mr. F. H. KALES, and Mr. R. S. THOMPSON, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an information in the nature of a *quo warranto*, exhibited in the court below against the defendants, charging them with usurping the office of South Park Commissioners. The question presented for determination arises on the sufficiency of the plea filed by defendants, in which they claim a legal title to the office. The relator demurred to the plea, but the court held it sufficient and overruled the demurrer, and rendered judgment in favor of respondents. To reverse that decision relator prosecutes this appeal.

The plea avers, that in February, 1869, the General Assembly passed an act authorizing the people of the three towns of South Chicago, Hyde Park and Lake to form a park district within their limits, to be governed by a corporate body, called the South Park Commissioners, in whom was vested the following, among other powers, viz: to locate and maintain a park within a district named; to assess and collect an annual tax of not exceeding, in any one year, $300,000, for the pay-

ment of interest on bonds to be issued, and for the improvement, maintenance and government of the park during the current year; to make special assessments; to issue bonds on the security of the park lands, and for which the three towns were also irrevocably bound; to exercise the right of eminent domain for the purpose of acquiring park lands; to exercise police powers over the park, and to administer the affairs of the corporation.

It was further provided, that the first board of park commissioners should be appointed by the Governer, and thereafter all vacancies should be filled by appointment of the judge of the circuit court of Cook county, when such vacancies should occur. By the provisions of the act it was left to the people of the three towns to decide, by vote, whether such corporation should be formed with corporate authorities thus appointed, and with the powers enumerated, or whether the act should be rejected.

On the 23d of March, 1869, an election was held, and resulted in each town in favor of the corporation, and the act was adopted. On the 16th day of the following April this election was confirmed by an act of the legislature, and soon thereafter the Governor appointed the first board, which organized in accordance with the park laws, the term of each member being determined by lot, as therein provided.

The first vacancy in the board occurred in March, 1870, by the expiration of the term of one of the commissioners, and the judge of the circuit court then filled the vacancy by appointing the same commissioner. In August, 1870, the present constitution, which provides for five judges of the circuit court of Cook county, was adopted, and ever since that time, all vacancies in the board have been filled, as it is averred in the plea, by each and every of the judges of the circuit court of Cook county who were such when the several vacancies occurred, and appellees were thus appointed. These are the material averments of the plea.

It is insisted that this plea fails to present a defense, be-

cause the circuit judge or judges of Cook county are prohibited, by article 2 of the constitution of 1848, which was in force when the park laws went into effect, from exercising the appointing power; that the judge, in making the appointment, was exercising executive or political power, and that article has prohibited a judge from exercising any but judicial functions. The constitution divides and distributes the powers of government into three departments, the legislative, the executive and the judicial, and prohibits any person or body of persons belonging to one department from exercising the powers confided to either of the others, except as directed or permitted by other portions of that instrument. This, it is urged, prevented the General Assembly from conferring or the judge of the circuit court from exercising the power of appointment, and hence all the appointments are void.

According to our theory of government, originally all power was vested in the people, and in the constitution of government the legislative became and is the supreme power of the State, as it directly represents and exercises the power of the people. It has been repeatedly held, and it is not controverted, that unless limited by constitutional restriction, the General Assembly may exercise all governmental power. But under our system of government it is limited by the establishment of the two other departments, and prohibited from the exercise of any powers confided to them. It then follows, that when an act passed by that body is challenged as being without constitutional authority, we must look to the State and Federal constitutions to determine whether it is inhibited. If no restriction is found, the act must be held valid and enforced as enacted. By reference to the article distributing the powers of government to the separate departments, it is manifest that it does not prohibit the legislature from establishing this park, nor from furnishing or designating the officers who shall exercise the powers and perform the duties, nor from naming the body, the officer or the person who may select and appoint them to the office. If there be any restriction it must

36—90 ILL.

be in some other clause of that instrument than the one referred to above.

That provision declares, only in general terms, that each department of the government shall be confined to the exercise of the functions of its own department. It does not undertake to define, in any specific manner, what are legislative, executive or judicial powers or acts. Like most other provisions of that instrument, the terms employed are of the most general and comprehensive character. We find no provision that declares that the appointment of a municipal officer, however extensive his powers, is the exercise of a legislative or executive power. To determine the character of the act we must look to other sources.

The executive power in a State is understood to be that power, wherever lodged, which compels the laws to be enforced and obeyed. And the instrumentalities employed for that purpose are officers, elected or appointed, who are charged with the enforcement of the laws. But the power to appoint is by no means an executive function unless made so by the organic law or legislative enactment. And in this case it is not so unless the power is thus conferred.

If it were conceded that these appointments were the exercise of political power, would it necessarily be violative of any provision of the constitution? The division and allotment of the powers are not into political, executive and judicial, but into legislative, executive and judicial. It was, no doubt, the exercise of political power, as that embraces all governmental powers and functions, whether exercised by one department or another, or the officers of one or the other. Political power is the policy of government or its administration, and may be exercised either in the formation or administration of government, or both. Hence it follows, that if it be a political power, that, of itself, in nowise militates against its exercise by a person belonging to the judicial department of the government.

The word " political," is defined by Bouvier to be, pertaining to policy or the administration of government. Political rights are those which may be exercised in the formation or administration of the government. And we understand the term "rights," as used in this definition, as being synonymous with power. All three departments aid in the administration of government, but perform different functions. The elector who votes for an officer or measure exercises political power, yet no one would claim that because a judge was a person belonging to the judicial department, he was prohibited from thus voting. We, therefore, conclude, that if the power to appoint to office is a political function, this article of the constitution does not prohibit its exercise because the power is political, and if prohibited, it must be for some other reason, or by some other provision which, in terms or by necessary implication, prohibits such an exercise of the appointing power.

The three different constitutions under which our State government has been administered each contains articles making the same division and distribution of the powers, and the same prohibition on persons belonging to one department from exercising the powers belonging to another. But the General Assembly, under each, have authorized, and the judges have exercised the power to appoint to various offices. Thus, the Supreme Court appointed a reporter of its decisions, under the act of 1829, (Sess. Laws, sec. 9, p. 41,) and this continued simply by virtue of statutory enactment until the power was conferred by the present constitution. Judges of the circuit courts were empowered by statute (Sess. Laws 1835, p. 32,) to appoint masters in chancery. These are both important offices, the latter performing for the court of chancery many of the duties of sheriff, besides other important functions. And the circuit judges continue, under statutory power alone, to appoint such masters.

The constitution of 1848 provided, that clerks of the Supreme and circuit courts should be elected, and made no pro-

vision for filling vacancies until an election should be had. But the General Assembly, by the act of 1849, which continued in force until our present constitution was adopted, and by the seventh section, confers power on judges of the Supreme Court, in case of a vacancy in the office of clerk of that court, to appoint a clerk, to hold until the next election fixed by the constitution, and in case of a vacancy in the office of circuit clerk, the circuit judge was authorized to fill the vacancy by appointment, the appointee to hold until the next regular election for county officers or representatives, which ever might first occur.

Again, our present constitution provides for the election of these officers by the people, and that vacancies shall be filled by election unless the unexpired term shall be less than one year, in which case, it is required to be filled by appointment by the court or judges thereof. (Sec. 32, art. 6.) The General Assembly, by sec. 11, chap. 25, Rev. Stat. 1874, provides, that when a vacancy shall occur in these offices, and the unexpired term exceeds one year, the court, or if in vacation the judge or judges thereof, shall appoint a clerk *pro tempore,* and the appointee shall perform the duties of the office until a clerk shall be elected and qualified according to law, to fill the vacancy. And sec. 132 of the Election law contains substantially the same provision.

At an early period the law provided, that where the State's attorney, from sickness or other cause, failed to attend a term of court, some qualified attorney might be appointed by the court to perform the duties of the office, in the absence of the officer, and there is a similar provision in reference to the Attorney General; and yet these offices are not filled and never were by the judges or the courts, but by election or otherwise. Still, when the appointment was thus made for the term, the person thus designated exercised all the power and performed all duties of the office, and were, in fact, *pro hac vice* officers.

The judges of the Supreme Court have been empowered by statute to appoint Supreme Court librarians (Sess. Laws,

1857, p. 57,) and also to appoint janitors to take care of the court rooms.

It is true, that these offices are connected with the judicial department of the State, but the power to appoint, in most cases specified, is conferred alone by statute, and not by the fundamental law. But this is not a question as to what department these officers belong to, or the functions they perform, but the question is, what department, in the absence of an election, can constitutionally confer the power on them to perform public duties. It is not whether the General Assembly, the executive or the judiciary are the best qualified to select and appoint such officers, but where is the power to do so lodged. The original power to fill all offices rests with the people, but our constitution has vested the power in the Governor to fill all constitutional offices not provided for by election or otherwise.

Sec. 10, art. 5, provides that the Governor shall, by and with the advice and consent of the Senate, appoint all officers whose offices are established by the constitution, or which may be created by law, and whose appointment or election is not otherwise provided for, and no officer shall be appointed or elected by the General Assembly. This section manifestly refers to officers or persons performing duties for the State, as contradistinguished from county, city, township or other municipal officers. If not, then every petty municipal officer would have to be appointed by the Governor and confirmed by the Senate, unless such officers were in all cases made elective. Counties, cities, townships, school trustees, directors of schools and other such corporations could not appoint persons to aid in carrying out the purpose of their organization. This provision, then, can have no reference to such or other municipalities.

This section, then, only being applicable to offices created by the constitution, and not otherwise provided for, and to new offices created by the General Assembly, and not required to be filled in some other mode, empowers the Governor to appoint to fill the place, but having no application to mere

municipal government. · When the General Assembly creates a body of that character, it has the power to provide the manner of filling the offices for its government. The constitution having prescribed no particular mode, that body is left to select any means for the administration of government it thinks best adapted to that end. It may provide for election by the people, or may authorize any officer or person to fill the offices by appointment. That power has not been placed beyond legislative domain. But under section 10 of article 9 of the constitution, the General Assembly is prohibited from imposing taxes on municipalities, and under section 9 can only vest the corporate authorities of such bodies with power to levy and collect taxes for corporate purposes. It is held, that the people in such bodies must assent thereto by electing the authorities, or, by a vote for the charter, assent to their appointment by some other officer or person. But such assent was given by the adoption of this charter by the people of the municipality. Hence these sections are not violated either in the letter or the spirit.

In the instances of appointment referred to, by judges or courts, we have seen the power was conferred under each of the three State constitutions, and all such appointments have passed unchallenged and unquestioned. Not only so, but since the power began to be exercised, our people have framed and adopted two new constitutions, in neither of which has any provision been inserted to prohibit the continued exercise of the power. Thus, we have seen, the power has been exercised and acquiesced in since the organization of the State government, and it has been repeatedly held by this and other courts that it is legitimate and proper to refer to the unquestioned practice under a law, for a long series of years, to determine its true construction. And the same is equally true as to the interpretation of a constitution. Here, we have such an interpretation by the General Assembly and the Executive on numerous occasions in passing laws conferring the power, and by the courts and judges in its exercise, and unchallenged by

the people for a half of a century, and it seems never to have occurred to any one that the article distributing the powers of government prohibited its exercise.

If it were conceded to be a doubtful question, still, according to the well recognized rules of interpretation, the doubt must be solved in favor of the validity of the law. The members of the General Assembly and the Executive of the State are under the same obligation to obey, and conform their action to the requirements of the organic law, as are the courts. It can not be presumed that they would recklessly or lightly omit that duty. They are presumed to conform their action to its requirements, as they interpret and understand its meaning. Hence the courts never, in cases of doubt, hold that these co-ordinate branches of the government have disregarded or misconceived its meaning.

We do not see that the case of *Bunn* v. *The People,* 45 Ill. 397, has any controlling effect on the decision of this case. That case holds the State House Commissioners were not officers, but simply persons exercising an employment temporary in its character. All will concede that these park commissioners are municipal officers, and are not State or county officers, or officers named in or created by the constitution. That case in nowise touches the power to fill these offices by appointment by the judge of the circuit court.

In the case of *The People ex rel.* v. *Rumsey,* 64 Ill. 44, the appointment of stenographic reporters by the courts in Cook county was, by section 29 of article 6 of the constitution, which requires uniformity of practice in all courts of the same jurisdiction, class or grade within the State, held to be unauthorized. It was not held that it was not a judicial function to appoint a reporter, and prohibited by article three of that instrument, but it was held that the act, if retained in force, would destroy the uniformity of practice in courts of the same class or grade, and that the act was repealed by the adoption of our present constitution.

In the case of *The People* v. *Williams,* 51 Ill. 65, it was held

to be the duty of the circuit judge to appoint assessors to fix the amount each tract of land was benefited and should contribute toward the improvement or making of the park. They were *quasi* officers, that levied or assessed the amount of burthens which each piece of real estate deemed benefited should contribute to the improvement, and no reason is perceived why, if the judge may appoint assessors clothed with such powers, he may not appoint these park commissioners, who exercise little or no more important powers.

The power might, no doubt, be sustained, on the ground that its exercise is the act of the individual, and not the performance of an official function,—that the act referring to the judge was only intended to apply to the person who filled the office at the time when the appointment was required to be made, whether it should be the same or a different person, thus being the individual act of the incumbent.

Under the constitution of 1848, as well as under our organic law, the General Assembly imposed the duty on a portion of the judges to act as a commission to hear evidence, pass upon and report claims against the State to the General Assembly for allowance or rejection by that body, and these commissioners, when so acting, were only performing duties usually imposed upon committees of one or both houses of the General Assembly. The judges have been empowered, from the organization of the government, to take acknowledgments of deeds, etc. For more than half a century, judges have been authorized to celebrate marriages and perform ministerial acts not judicial in their character, and, so far as we have known, they have never been challenged. So that whether the appointment of these park commissioners be the exercise of a judicial, ministerial or other function, whether it be the act of the officer as such, or as an individual, we are of opinion that the power was well conferred, and might be properly exercised by the circuit judge. Nor has the language or the spirit of the constitution been violated by this enactment.

If we were to hold that the circuit judge has no power to

appoint, it might be that all acts performed by the commissioners thus appointed would be void, and if so, then disastrous results to individuals and corporate bodies would, no doubt, follow. Hence the necessity of adhering rigidly to the rule, that in case of uncertainty, the doubt must be cast in favor of the validity of the law, and a law to be invalid must clearly contravene the fundamental law.

The plea avers that the judges of the circuit court of Cook county severally joined in the appointment of these commissioners; that they were appointed by each and every of them. If this be true, and it stands admitted by the demurrer, under any construction of the charter this appointment must be held sufficient. If it required the appointment by one only, the fact the others joined in the appointment can not matter, as, if done by either, it would be sufficient. If all were required to join, then there was a literal compliance with the law, so that in any event the power was well exercised.

Perceiving no error in the record the judgment of the court below must be affirmed.

*Judgment affirmed.*