THE PEOPLE *ex rel.* W. H. Stead, Attorney General,

*v.*

THE BOARD OF SUPERVISORS OF EDGAR COUNTY *et al.*

*Opinion filed October 23, 1906.*

1. ELECTIONS—*statutory provision for selecting judges of election is mandatory.* Section 33 of the Election law, as amended in 1905, (Laws of 1905, p. 203,) specifying the method of appointing judges of election, is mandatory; and it is the duty of the county board, in counties under township organization, to appoint as judges of election the persons selected by the two groups of members of the board belonging to the respective political parties, as specified in that section.

2. SAME—*the precinct, and not the township, is the unit in selecting election judges.* In appointing election judges under section 33 of the Election law, as amended in 1905, the precinct or election district is the unit, and not the township, and the number of election judges from each political party for each precinct or election district is determined by the vote in such precinct or district, and not by the total vote in the township.

3. CONSTITUTIONAL LAW—*section 33 of the Election law, as amended in 1905, is not special legislation.* The fact that the basis for appointing judges of election in townships under township organization, as specified in section 33 of the Election law, as amended in 1905, is the vote cast at the preceding general election for Governor, whereas the basis in counties not under township organization is the vote cast at the preceding general election, does not render section 33 a special or local law prohibited by the constitution, since a law applying only to counties under township organization is a general law, within the meaning of the constitution.

4. SAME—*section 33 of Election law, as amended in 1905, is not void as delegating legislative power.* Section 33 of the Election law, as amended in 1905, conferring power upon the county board to appoint judges of election in the manner therein specified, is not unconstitutional, as delegating legislative power to the county board, since there is no constitutional restriction upon the power of the legislature to provide for the manner of appointment of officers of the class to which judges of election belong.

ORIGINAL petition for *mandamus.*

This is an original proceeding commenced in this court in the name of the People, upon the relation of the Attorney General, against the board of supervisors of Edgar county, to coerce said board of supervisors to appoint judges of election in the several election districts in said county in accordance with the provisions of an act of the General Assembly approved May 18, 1905, in force July 1, 1905, (Laws of 1905, p. 202,) entitled "An act to amend sections 32, 33 and 37 of an act entitled 'An act in regard to elections, and to provide for filling vacancies in elective offices,' approved April 3, 1872, in force July 1, 1872, as amended by act approved June 3, 1897, in force July 1, 1897, and an act approved June 22, 1885, in force July 1, 1885, respectively."

The petition avers that Edgar county is under township organization; that there are fifteen townships in the said county, and that each of said townships has one supervisor and that the township of Paris has two assistant supervisors, and that the board of supervisors of said county, as organized, consists of seventeen members; that at the general election in November, 1904, there were, and now are, twenty election districts in said county; that the township of Embarrass contains two election districts, numbered 1 and 2, the township of Young America two election districts, numbered 1 and 2, and the township of Paris four election districts, numbered 1, 2, 3 and 4, and that each of the other townships in said county contains one election district; that at the general election in November, 1904, Charles S. Deneen was the candidate of the republican party for Governor and Lawrence B. Stringer was the candidate of the democratic party for Governor; that in the townships of Bruilletts Creek, Buck, Edgar, Grand View, Hunter, Shiloh and Symmes, each having but one election district, said Lawrence B. Stringer, as the democratic candidate for Governor, received the highest number of votes at the election for Governor in November, 1904, and in each of said

townships Charles S. Deneen, as the republican candidate for Governor, received the second highest number of votes for Governor at said election; that in the townships of Elbridge, Kansas, Prairie, Ross and Stratton, each having but one election district, said Charles S. Deneen, as the republican candidate for Governor, received the highest number of votes at the election for Governor in November, 1904, and in each of said townships Lawrence B. Stringer, as the democratic candidate for Governor, received the second highest number of votes for Governor at said election; that in district No. 1 of the township of Embarrass Charles S. Deneen received 107 votes and Lawrence B. Stringer 169 votes for the office of Governor at said general election in November, 1904; that in district No. 2 Charles S. Deneen received 149 votes and Lawrence B. Stringer 128 votes for the office of Governor; that in district No. 1 of the township of Young America Charles S. Deneen received 148 votes and Lawrence B. Stringer 144 votes for the office of Governor at said general election in November, 1904; that in district No. 2 Charles S. Deneen received 98 votes and Lawrence B. Stringer 103 votes for the office of Governor; that in the township of Paris Charles S. Deneen received the highest number of votes cast for Governor in each election district at the general election for Governor in 1904 and Lawrence B. Stringer received the second highest number of votes cast for Governor in each election district in said township at said general election; that eleven of the members of said board of supervisors are members of and belong to the democratic party and six of the members of said board of supervisors are members of and belong to the republican party; that the board of supervisors of Edgar county met in regular session on the 11th day of June, 1906, as required by law, fifteen members of said board being present; that it was the duty of said board of supervisors at said meeting to appoint three judges of election in each election district in said county; that it was the duty of the

members of the board of supervisors belonging to the political party having the greatest number of votes upon said board of supervisors to select the majority of the judges of election in each election district in each township in said county in which said political party cast the highest number of votes at the preceding general election for Governor, and it was the duty of the board of supervisors to appoint as judges of election for those election districts the persons so selected; that it was also the duty of the members of the board of supervisors belonging to the political party having the second highest number of votes upon the board of supervisors to select the minority judges of election in each election district in each township in said county in which said political party cast the second highest number of votes at the preceding general election for Governor, and it was the duty of the board of supervisors to appoint as judges of election for those districts the persons so selected; that the members of the board of supervisors belonging to the political party having the second greatest number of votes upon the said board of supervisors did select two persons, who possessed all the qualifications of judges of election specified in the statute, to be appointed judges of election in each of the election districts in each township in which said political party cast the highest number of votes for Governor at the preceding general election· for Governor, and one person to be appointed judge of election in each election district in each township in said county in which said political party to which said minority members belonged cast the second highest number of votes at the preceding general election for Governor; that the said minority members of said board of supervisors presented to said board of supervisors at its said meeting, in open session, a list of the names of the persons so selected as judges of election in the said several districts in the several townships of said county and demanded of said board of supervisors that the persons so selected be appointed by the board of supervisors as

judges of election in the several districts for which they were selected; that said list and demand were in writing, and were accompanied by a certificate of the county clerk of Edgar county showing the vote for Governor in each election district in said county cast at the last preceding general election for Governor, being the general election held in November, 1904; that a motion was made, seconded and voted upon by the members of the board of supervisors, that the board of supervisors appoint the persons so selected as judges of election in the several election districts of Edgar county in and for which they had been selected; that the majority members upon the board of supervisors voted against said motion and the minority members upon said board of supervisors voted for said motion, and the majority vote upon said motion being against the proposition to appoint said persons as judges of election in said several districts, the motion was declared by the chairman of said board to have been lost; that the board of supervisors of said county have failed and refused to perform their duty, as provided by law, by declining to appoint as judges of election in said several election districts the persons selected as judges of election by the minority members of said board, and the petition prays that the writ of *mandamus* issue to compel them to so perform their duty. A general demurrer was filed by the respondents to the petition.

W. H. STEAD, Attorney General, for petitioner.

Mr. JUSTICE HAND delivered the opinion of the court:

The first question presented for decision upon this record is, is the provision of section 33 of the statute as amended, which provides the county board shall appoint as judges of election in the several election districts or precincts of the county the persons selected by the members of the county board belonging to the political party having the greatest number of votes upon said board and by the mem-

bers of the county board belonging to the political party
having the second greatest number of votes upon said board,
mandatory, or only directory?

The statute provides that in counties under township
organization the county board, at its regular or at a special
meeting, in the month of June in each year, except where
judges are appointed by election commissioners, shall ap-
point in each election precinct or district in the county three
judges of election, who shall be capable and discreet electors
and possess the qualifications required by law of judges of
election; that no more than two persons of the same politi-
cal party shall be appointed judges in the same election dis-
trict or undivided precinct, but that the supervisor shall be
appointed as one of the judges of election in the district
or precinct in which he resides, and that the remaining
judges of election in the various election precincts and dis-
tricts of the county shall be made in the following manner:
First, that the members of the county board belonging to
the political party having the greatest number of votes upon
the board shall select the majority of the election judges
in each election district or precinct in each township in
which said political party cast the highest number of votes
at the preceding general election for Governor, and shall
also select the minority judge of election in each election
district or precinct in each township in which said political
party cast the second highest number of votes for Governor
at the preceding general election for Governor; second, that
the members of the county board belonging to the political
party having the second greatest number of votes upon the
county board shall select the majority of the election judges
in each election district or precinct in each township in
which said political party cast the highest number of votes
at the preceding general election for Governor, and shall
also select the minority judge of election in the election dis-
trict or precinct in each township in which said political
party cast the second highest number of votes at the pre-

ceding general election for Governor.   Said section pro-
vides in express terms that the county board shall appoint
the person or persons thus selected as judges of election in
the several election precincts and districts in the county.

It would seem clear from a reading of section 33 that
it was the design of the General Assembly that the political
party casting the highest vote and the political party cast-
ing the second highest vote should be represented upon the
board of judges of election at each voting precinct in the
county, as it is provided, "no more than two persons of the
same political party shall be appointed judges in the same
election district or undivided precinct."   Prior to the
amendment of 1905 the foregoing clause of the statute was
found in section 33 as it then stood upon the statute books,
but it was doubtless thought by the framers of the amend-
ment that if the selection of the judges of election was left
to the county board, as it was by section 33 before it was
amended, a partisan county board, while complying with the
letter of the statute, might violate its spirit by selecting a
minority judge, who, although a member of a political party
differing from that of the political party of the majority of
the judges composing the board of judges of election, by
reason of his inexperience, timidity, want of party zeal, or
otherwise, might not represent upon the board of judges of
election the party to which he nominally belonged, and with
a view to remedy this defect in the law the amendment was
passed whereby it was provided the judges of election should
be selected by the representatives of the two leading politi-
cal parties upon the county board.   If, after the selection
of the judges of election was made under the amendment
of 1905, it was left optional with county boards whether
they would comply with such section as amended, and ap-
point the persons thus selected or not, as they might see fit,
the amendment would be annulled and the statute remain
in the same form as it was prior to the amendment, as prior
to the amendment the majority upon the county board could

make the appointment of judges of election as they willed, provided only no more than two of such judges were members of the same political party. We are of the opinion that the majority upon the county board are powerless to make selections of judges of election in lieu of the selections made by the minority, and to appoint the persons thus selected in lieu of those selected by such minority. In other words, we think it clear that the statute is mandatory, and that it is the duty of the county board to appoint as judges of election the persons selected by the members of the board belonging to the political party having the greatest number of votes upon the board, and by the members of the county board belonging to the political party having the second greatest number of votes upon said board.

It is next contended that in the townships of Embarrass and Young America, as Lawrence B. Stringer carried both townships, that of Embarrass by a majority of forty-one votes and that of Young America by a majority of one vote over Charles S. Deneen for Governor, the majority members of the county board have the right to select two judges of election in each of the four election precincts or districts in said townships. We do not think this contention sound. In Embarrass township Charles S. Deneen carried district No. 2 by a majority of twenty-one votes over Lawrence B. Stringer, while Lawrence B. Stringer carried district No. 1 over Charles S. Deneen by a majority of sixty-two votes, and in Young America township Charles S. Deneen carried district No. 1 over Lawrence B. Stringer by a majority of four votes, while Lawrence B. Stringer carried district No. 2 by a majority of five votes over Charles S. Deneen. We think it clear the precinct or district is made the unit by this statute, and not the township. It is the evident intention of the statute that at each voting place there shall be an election board consisting of three judges, and that the political party which cast the greatest number of votes for Governor at the last general election in that precinct is enti-

tled to a majority of the judges of election in said precinct. Our holding, therefore, is, that in Embarrass township the republican party is entitled to two judges in district No. 2 and the democratic party one, while in district No. 1 the democratic party is entitled to two judges and the republican party to but one; and in Young America township the republican party is entitled to two judges in district No. 1 and the democratic party to one, while in district No. 2 the democratic party is entitled to two judges and the republican party to one.

It is also urged that the petition was prematurely filed. The board of supervisors of Edgar county met in regular session on June 11, 1906, and organized. On the next day the members of said board belonging to the political party having the second greatest number of votes upon said board selected two judges of election in each election district in said county wherein the political party to which they belonged had cast the highest number of votes for Governor at the November election, 1904, and one judge of election in each election district in said county wherein the political party to which they belonged had cast the second highest vote at said election for Governor, and presented a list of the names of the persons so selected to said county board while in session, and made a demand upon said county board, in writing, that the board appoint such persons as judges of election in and for the respective election districts for which they had been selected, and a motion was made that the persons so selected be appointed by the county board as judges of election in the respective election districts for which they had been selected. That motion failed to carry and the board refused to make said appointment, whereupon one of the majority members of said board made a motion, which was carried, that "the board adjourn till ten o'clock A. M. June 26, 1906, at which time the election judges are to be selected." It is therefore clear that said county board had refused to appoint the persons as judges

of election who had been legally selected by the minority members prior to the time this petition was filed and adjourned until June 26, when they proposed to *select,*—not appoint,—judges of election in said county. As we have seen, it is the duty of the county board to appoint,—not to *select,*—judges of election, as the power to select judges of election is delegated by the statute to a body outside of the county board.

In *State Board of Equalization* v. *People,* 191 Ill. 528, which was a *mandamus* proceeding against the State Board of Equalization to require it to value and assess the corporate stock and franchises of certain corporations organized under the laws of this State, the same position was taken by the State Board of Equalization as is here taken by the respondents. On page 539 it was said: "It is next contended that the respondents were not in default at the time the petition was filed; that the State Board of Equalization was then in session and had the entire session in which to value and assess the capital stock and franchises of said corporations, and that the petition for *mandamus* was therefore prematurely filed. The general rule is, that before applying for a *mandamus* an express demand should be made, and there should be a refusal to perform, either express or implied. In cases, however, where the duty sought to be enforced is of a public nature, affecting the people at large, and there is no one especially empowered to demand its performance, there is no necessity for a demand and a refusal. The law requiring the duty stands as a continual demand. (13 Ency. of Pl. & Pr. 618; *People* v. *Board of Education,* 127 Ill. 613; *People* v. *Town of Mt. Morris,* 137 id. 576; *People* v. *Crabb,* 156 id. 155; *Commissioners of Highways* v. *Jackson,* 165 id. 17.) The State Board of Equalization met on the 10th day of September. On the 11th day of October the board, and each member thereof, were requested, in writing, to value and assess the capital stock and franchises of said corporations. Thereafter, and prior to the

filing of the petition, the board did nothing toward the performance of its duty, and some of its members stated nothing would be done.   Thirteen of said corporations were not assessed at all, and on the day the board adjourned its annual session seven were assessed at so low a rate as to amount to no assessment.   The duty to assess the capital stock and franchises of said corporations rested upon the respondents from the first day of the session of the board, and continued from day to day throughout the session. Such duty could not be escaped by delay, and such delay and subsequent failure to act show conclusively that respondents were willfully in default."

We are of the opinion no further demand and refusal was required than appears from this record before a petition for *mandamus* might properly be filed to require the respondents to perform their duty, and that the petition was not prematurely filed.

It is further urged that the amendment to section 33 is unconstitutional and void, and furnishes no authority for the selection of judges of election by the majority or minority members of the county board.   It is first said the amendment is special legislation and in conflict with section 22 of article 4 of the constitution, because it provides a basis for the selection and appointment of election judges in counties under township organization different from that provided by section 32 of the same act for the selection and appointment of judges of election in counties not under township organization, in this: that in counties under township organization the selection is to be based upon the vote cast "at the preceding general election for Governor," while in counties not under township organization the selection is to be based upon the vote cast "at the preceding general election," which would include an election for county, or even township, officers.   We have never understood that a law which only applies to the class of counties in this State which have adopted township organization was void, as

amounting to special legislation, for that reason alone, but are of the opinion if the law applies to all counties in the State which have heretofore adopted or may hereafter adopt township organization, then it is, within the meaning of the constitution, general legislation. In *People* v. *Wright,* 70 Ill. 388, quoting from *McAunich* v. *M. & M. R. R. Co.* 20 Iowa, 338, on page 398, it was said: "Laws are general and uniform, not because they operate upon every person in the State, for they do not, but because every person who is brought within the relations and circumstances provided for is affected by the laws. They are general and uniform in their operation upon all persons in the like situation, and the fact of their being general and uniform is not affected by the number of those within the scope of their operation." And in *Potwin* v. *Johnson,* 108 Ill. 70, it was held that the act in relation to cities and villages is a general law, and not local and special, although there may be municipalities in the State to which it is not applicable, namely, those in existence under special charters at the time of the adoption of the constitution which have not since sought to have their charters changed or amended. On page 80 it was said: "After full consideration and reconsideration we are as firmly committed to the doctrine as we can be to any doctrine, that the act in relation to cities and villages is a general law, and not local or special, although there may be municipal corporations to which it is not applicable, namely, municipal corporations in existence under special charters at the time of the adoption of the constitution which have not since sought to have their charters changed or amended. It is general and of uniform application to all cities, towns and villages thereafter becoming incorporated or thereafter having their charters changed or amended, to the extent of such change or amendment, and thus fully conforms to the definition of a general law."

The case of *Reynolds* v. *Town of Foster,* 89 Ill. 257, is a case directly in point. In that case it was held that the

Road and Bridge law, which applied to all counties in the State acting under township organization and which gave police magistrates and justices of the peace jurisdiction of complaints for a refusal or neglect to work upon the roads when ordered so to do, and which provided that the summons in such case should be returnable within five days instead of within not less than five or more than fifteen days, as is provided by general law, was not a local or special law within the meaning of the constitutional provision against such legislation, as the statute applied to and was operative in all counties in the State under township organization. On page 260 the court said: "We cannot concur with appellant in the view he urges, that this act, differing, as it does, in some respects from the general law conferring jurisdiction upon justices of the peace, is obnoxious to the criticism he has attempted. It is not, nor can it be, held, these provisions of the Road and Bridge act make the act local or special. In no correct sense of these terms can this be so regarded. We know of no constitutional inhibition on the legislature to provide for summary convictions in certain cases in counties under township organization, provided the act applies and is operative in all such counties." And in *People* v. *Hazelwood*, 116 Ill. 319, on page 329, it was said: "We have held that laws are general and uniform, and hence not obnoxious to the objection that they are local or special, when they are general and uniform in their operation upon all in like situation."

It is also urged said section 33 is unconstitutional in this: that it is said it delegates legislative power to the members of a majority of a political party and to the members of a minority of a political party upon the county boards of the State by authorizing such members of the county boards, and under certain circumstances the chairman of a county central committee of a political party, to select the judges of election to be appointed in the several counties of the State under township organization. The

selection or appointment to office of the class of officers to which judges of election belong is not specifically designated in the constitution as either a legislative, judicial or executive power, and when the constitution is silent upon the subject we think the legislative branch of government may provide the method of filling an office created by it in such manner as it may deem best,—that is, either by appointment or by election by the people,—and if by appointment, it may confer such appointing power upon an officer, or upon a private individual, without infringing upon any provision of the constitution. (*People* v. *Morgan,* 90 Ill. 558; *People* v. *Hoffman,* 116 id. 587.) And in *People* v. *Osborne,* 7 Col. 605, it is held, in the absence of constitutional restrictions it is competent for the legislature to provide the manner of making original appointments, the terms of offices, how vacancies shall be filled and when the term of an incumbent appointed to fill a vacancy shall expire.

In the *Hoffman case,* in speaking of the power of the legislature to authorize the county court to appoint election commissioners, on page 604, it was said: "The original power to fill all offices rests with the people. The constitution, in section 10 of article 5, provides for the appointment of certain officers by the Governor. But the reasoning in *People* v. *Morgan* shows that it was never intended to vest in the Governor the selection of such local and municipal officers as these commissioners. The power to appoint officers of this class is not specifically designated in the constitution as either a legislative, judicial or executive power. It is not therein specifically conferred on either department. Nor is there anything therein expressed which, either directly or impliedly, prohibits the legislature from authorizing the county court to appoint the commissioners. Therefore the authority conferred on that court to do so does not make the act invalid."

In the *Morgan case,* in considering the right of the legislature to confer power upon the circuit court to appoint

South Park commissioners, on page 566, it was said: "When the General Assembly creates a body of that character it has the power to provide the manner of filling the offices for its government. The constitution having prescribed no particular mode, that body is left to select any means for the administration of government it thinks best adapted to that end. It may provide for election by the people, or may authorize any officer or person to fill the offices by appointment."

We are of the opinion section 33 as amended is a constitutional enactment.

The demurrer to the petition will be overruled and the writ of *mandamus* awarded as prayed for in the petition.

*Writ awarded.*