THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HARRY EVANS, Plaintiff in Error.

*Opinion filed December 21, 1910.*

1. OFFICES—*the general distinction between State officers and county officers.* In general, a State officer is one whose duties and powers are co-extensive with the State while a county officer is one whose duties and powers are co-extensive with the county, and the mere fact that the official acts of an officer are so far extra-territorial that they are binding throughout the State does not necessarily make him a State officer.

2. SAME—*what offices must be filled by the Governor.* Under section 10 of article 5 of the constitution the appointing power to fill offices established by the constitution or created by law is vested in the Governor, provided a method of appointment to fill such offices is not otherwise provided by law; and hence if a method of appointment otherwise than by appointment by the Governor is provided by law for either a constitutional office or one created by law, such provision of the constitution does not apply.

3. SAME—*legislature may authorize county judges to appoint miners' examining boards.* It is within the power of the legislature, in creating miners' examining boards, to provide that the county judges of the State shall appoint such boards for their respective counties.

4. CONSTITUTIONAL LAW—*Miners' Examining Board act is not invalid because county judges appoint such boards.* The Miners' Examining Board act of 1909 (Laws of 1909, p. 284,) is not unconstitutional upon the ground that the members of such boards are to be appointed by the county judges for their respective counties instead of by the Governor.

5. SAME—*legislature may prescribe regulations to prevent unqualified persons from mining coal.* In the exercise of the police power of the State the legislature may prescribe regulations for securing the admission of qualified persons to all callings demanding special knowledge, experience and skill, including coal mining.

6. Same—*Miners' Examining Board act not invalid because it exempts certain miners from examination.* The provision of the Miners' Examining Board act of 1909 which exempts from examination for a certificate a miner who has had two years' practical experience as a miner and was actually employed in mining in this State at the time such act went into effect, is not invalid as giving such miner a special privilege or as discriminating against miners employed in other States at that time and miners not then actually employed in this State.

7. Same—*the right to be appointed or elected to office is not a property right.* The right to be appointed or elected to office is not a property right under the constitution but is a mere privilege, and a law creating an office is not unconstitutional because it prescribes qualifications for such office which all citizens of the State do not possess.

8. Same—*provisions of Miners' Examining Board act prescribing qualifications for members are not invalid.* The provisions of the Miners' Examining Board act of 1909 requiring members of such board to be practical, experienced and skillful miners of at least five years' continuous experience, and who were actually engaged, at the time such act took effect, in mining coal in the county for which they are appointed, are not invalid as discriminating against miners not possessing such qualifications.

9. Same—*statute not invalid merely because it is unwise.* The courts have nothing to do with the wisdom of a statute and cannot declare a statute invalid because it may be impolitic or unwise.

10. Mines—*place where examining board "resides" means the county for which its members are appointed.* The residence of the miners' examining board, referred to in the provision of the act of 1909 requiring the board to examine, under oath, "all persons residing in the county in which said board resides who apply for certificates," means the county for which the board was appointed, which is the county wherein the members are engaged in mining coal and not the county in which they may live.

11. Same—*who may take examination for coal miner's certificate.* Under the Miners' Examining Board act of 1909 every miner who is either a resident or a non-resident of Illinois or of the county where he makes his application for examination, and who has had two years' experience in mining coal, and desires to engage in mining in the county where he applies for examination, is entitled to take the examination and can be granted a certificate and engage in mining coal.

12. Same—*provision of Miners' Examining Board act relating to apprentices construed.* Under the provision of section 1 of the

Miners' Examining Board act that "any such certificated miner may have one uncertificated person working with him and under his direction for the purpose of learning said business," etc., the "uncertificated persons" so referred to are not to be selected and appointed by the certificated miners with whom they work, but by the persons who own the mine and who are to pay for their work.

13. SAME—*provision of Miners' Examining Board act authorizing county judge to draw warrants is invalid.* That portion of the Miners' Examining Board act of 1909 which provides that money paid into the State treasury by the board shall be paid out again on warrants issued by the county judge is unconstitutional, but the invalidity of such provision does not affect the remaining portion of the act, which is valid and constitutional.

WRIT OF ERROR to the County Court of Saline county; the Hon. G. H. DORRIS, Judge, presiding.

At the May term, 1910, of the county court of Saline county an information was filed against the plaintiff in error, Harry Evans. This information charged him with having violated the statute known as the Miners' Examining Board statute. The information alleged, in substance, that the plaintiff in error was the mine manager and foreman of the Wasson Coal Company, operating a coal mine in Saline county, and that as such he suffered and permitted one Mason Dunning to be employed and to work in said mine as a miner, and that said Mason Dunning did not have a certificate of competency and qualification from the miners' examining board of some county in Illinois and was not working under the direction of a certificated miner. The plaintiff in error moved to quash the information for insufficiency, which motion was overruled. A plea of not guilty was entered, and thereupon a trial was had, which resulted in the plaintiff in error being found guilty, and a fine of $100 was assessed against him by the judgment of the court. Motions for a new trial and in arrest of judgment were made and overruled, and this writ of error is prosecuted to reverse that judgment.

The only question raised in this court is the constitutionality of the statute under which the plaintiff in error was found guilty and fined.

The uncontradicted evidence is that the plaintiff in error was the mine manager and foreman of the mine of the Wasson Coal Company, situated in Saline county; that he had the complete management of the mine, including the employment and discharge of miners; that at the time complained of, one Mason Dunning was employed in the mine; that Mason Dunning did not have a certificate or license from the miners' examining board of Saline county or of any other county; that he was a citizen of the United States and of the State of Illinois and a resident of Saline county; that he had been working in the mine of the Wasson Coal Company as an assistant of his father, who was a certificated miner; that some days prior to the filing of the information the father of Mason Dunning ceased to work in the mine. Mason Dunning, however, continued to work in the mine notwithstanding his father's departure and without being under the direction of or working with any other certificated miner. This fact was communicated to plaintiff in error and known by him, but he permitted Mason Dunning to continue to work.

The Miners' Examining Board statute (Hurd's Stat. 1909, p. 1515,) reads as follows:

"An act to amend an act entitled 'An act to provide for the safety of persons employed in and about coal mines, and to provide for the examination of persons seeking employment as coal miners, and to prevent the employment of incompetent persons as miners, and providing penalties for the violation of the same,' approved June 1, 1908, in force July 1, 1908. (Approved June 5, 1909. In force July 1, 1909.)

"Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That an act entitled 'An act to provide for the safety of persons em-

ployed in and about coal mines, and to provide for the examination of persons seeking employment as coal miners; and to prevent the employment of incompetent persons as miners, and provide penalties for the violation of the same,' approved June 1, 1908, and in force July 1, 1908, be and the same is hereby amended to read as follows:

"Sec. 1. That hereafter no person whosoever shall be employed or engaged as a miner in any coal mine in this State without having first obtained a certificate of competency and qualification so to do from a miners' examining board of some county in this State: *Provided,* that any miner actually employed in this State when this act becomes effective, who has been employed as a miner at least two years in coal mines, shall be entitled to a certificate permitting him to work in the mines of this State as a practical miner: *And provided further,* that any such certificated miner may have one uncertificated person working with him and under his direction for the purpose of learning said business of mining and becoming qualified to obtain a certificate in conformity with the provisions of this act.

"Sec. 2. In each county of this State where the business of coal mining is carried on, there shall be created a board to be styled 'The Miners' Examining Board,' to consist of three .practical, experienced and skillful miners of at least five years' continuous experience, who are then actually engaged in mining coal in the county for which they are appointed. Such appointments shall be made by the county judges in their respective counties immediately after this act shall be.in effect, and on or before the 10th day of January in each year thereafter, and all vacancies in said board shall be at once filled by the county judge of the county in which such vacancy occurs. Each of said boards shall organize by electing one of the members president, and one member secretary; and every member of said board shall, within ten days after his appointment, take and subscribe an oath or affirmation before a properly qualified officer of

the county in which he resides, that he will honestly and impartially discharge his official duties; each of said boards shall provide itself with an impression seal, having engraved thereon the name of said board and the county for which it is appointed. Members of said board shall receive, as compensation for their services, three and fifty one-hundredths dollars ($3.50) per day for each day actually engaged in their official duties, and all legitimate and necessary expenses incurred in attending the meetings of said board, under the provisions of this act, and no part of the salary of the members of said board, or the expenses thereof, shall be paid out of the State treasury except as herein provided.

"Sec. 3. Each of said examining boards shall designate some convenient meeting place in their respective counties, of which due notice shall be given by advertisement in two or more newspapers of the proper county. At such meeting a book of registration shall be open in which shall be registered the name and address of each and every person to whom said board shall issue a certificate of competency under this act.

"Sec. 4. Each applicant for examination for the certificate herein provided, shall pay a fee of one dollar, and the amount derived from this source shall be held by said boards respectively and applied to the expense and salaries herein provided, and such as may arise under the provisions of this act. The said boards shall report in writing quarterly to the court appointing them, all moneys received and disbursed under the provisions of this act, together with the number of miners examined under this act and the number failing to pass the required examination. All moneys over and above the amount required to pay the salaries of the members of said board in their respective counties, and their necessary actual expenses while in the performance of their duty as such board, shall be paid to the State Treasurer on the second Wednesday of each and every month, and the same shall be paid out by said State Treasurer only upon

warrants is'sued by the county judge o'f the county for which such board was appointed. Said warrants shall show on their face that they are for the payment of the salary and necessary actual expenses of the members of said board in such county.

"Sec. 5. It shall be the duty of said boards respectively to meet on the first Wednesday of each month and to remain in session for a period of two days, and no longer, and said meeting shall be public. The said board shall examine under oath all persons residing in the county in which said board resides who apply for certificates as provided in this act, and said board shall grant such certificates of competency or qualifications to such applicants as are qualified, which certificates shall entitle the holders thereof to be employed as, and to do the work of miners in any county in this State, without other or further examination. No certificate of competency shall issue or be given to any person under this act unless he shall produce evidence of having had not less than two years of practical experience as a miner or with a miner, and in no case shall an applicant be deemed competent unless he appear in person before the said board and orally answer intelligently and correctly at least twelve practical questions propounded to him by the board pertaining to the requirements and qualifications of a practical miner. The said board shall keep an accurate record of the proceedings of their meetings and in said record shall show a correct detailed account of the examination of each applicant with questions asked and their answers, and at each of these meetings the board shall keep said record open for public inspection. Any miner's certificate granted under the provisions of this act shall not be transferable and any transfer of the same shall be deemed a violation of this act. Such certificates shall be issued only at meetings of said boards, and said certificates shall not be legal unless then and there signed by at least two members

of said board, and sealed with the seal of the board issuing the certificate.

"Sec. 6. That no person shall hereafter engage as a miner in any coal mine without having obtained such certificate as aforesaid. And no person shall employ any person as a miner who does not hold such certificate as aforesaid, and no mine foreman or superintendent shall permit or suffer any person to be employed under him, or in the mines under his charge and supervision as a miner except as herein provided, who does not hold such certificate. Any person or persons who shall violate or fail to comply with the provisions of this act shall be guilty of a misdemeanor, and on conviction thereof shall be sentenced to pay a fine of not less than $100 and not more than $500, or shall undergo imprisonment in the county jail for a term of not less than thirty days and not to exceed six months, or both, at the discretion of the court.

"Sec. 7. It shall be the duty of the several miners' examining boards to investigate all complaints or charges of non-compliance or violation of the provisions of this act, and to prosecute all persons so offending; and it shall be the duty of the prosecuting attorney of the county wherein the complaints or charges are made to investigate the same and prosecute all persons so offending, and it shall at all times be the duty of such prosecuting attorney to prosecute such members of the miners' examining board as have failed to perform their duty under the provisions of this act. Upon conviction of any member of the miners' examining board for any violation of this act, in addition to the penalties herein provided, his office shall be declared vacant, and he shall be deemed ineligible to act as a member of the said board.

"Sec. 8. For the purpose of this act, the members of the said miners' examining board shall have the power to administer oaths."

DEFREES, BUCKINGHAM, RITTER & CAMPBELL, (M. S. WHITLEY, of counsel,) for plaintiff in error.

W. H. STEAD, Attorney General, W. C. KANE, State's Attorney, and JUNE C. SMITH, (GEORGE B. GILLESPIE, and A. M. FITZGERALD, of counsel,) for the People.

Mr. JUSTICE HAND delivered the opinion of the court:

It is contended that the Miners' Examining Board statute is unconstitutional by reason of the fact that the county judges of the State cannot be constitutionally invested with the power to appoint the members of the miners' examining boards provided for by that statute, it being the view of the plaintiff in error that the members of said boards are State officers, and that a State officer can only be appointed by the Governor. We cannot accede to the view of plaintiff in error. The members of such miners' examining boards are appointed for and perform their duties in the counties wherein they are appointed and have no jurisdiction to act outside of the county in which they are appointed. In general it may be said that a State officer is one whose duties and powers are co-extensive with the State, while a county officer is one whose duties and powers are co-extensive with the county, (*State* v. *Burnes,* 38 Fla. 367,) and the fact that the official acts of an officer are so far exra-territorial that they are binding throughout the State does not make the officer who performs such acts necessarily a State officer.

If, however, it were conceded that the members of the miners' examining boards were State officers, still it would not certainly follow that the members of such boards must be appointed by the Governor. Section 10 of article 5 of the constitution, under which the Governor obtains his appointing powers, reads as follows: "The Governor shall nominate, and by and with the advice and consent of the

senate, (a majority of all the senators selected concurring, by yeas and nays,) appoint all officers whose offices are established by this constitution, or which may be created by law, and whose appointment or election is not otherwise provided for; and no such officer shall be appointed or elected by the General Assembly." It was clearly the intention of the framers of this constitutional provision that the appointing power, in cases of all offices established by the constitution or created by law, should be vested in the Governor, unless the appointment or election to such offices is otherwise provided for by the constitution or by statutory enactment. The language found in said section of the constitution, "and whose appointment or election is not otherwise provided for," is plain and unambiguous; and clearly indicates that if by the constitution an office is established and the method pointed out in the constitution for filling such office is otherwise than by appointment by the Governor, the portion of the section which provides that "the Governor shall nominate and by and with the advice and consent of the senate" shall appoint all officers, etc., would not apply as to such constitutional office; and if this be true, it is, we think, equally true that if an office be created by the legislature and a method otherwise than by nomination and appointment by the Governor to fill such an office is provided for by law, such law would not be subject to constitutional objection on the ground that the legislature had deprived the Governor of a part of his appointing power.

The question then arises, has the legislature the right to vest such appointing power in county judges, each judge making the appointment in the county wherein the board is to be appointed? In *People* v. *Hoffman*, 116 Ill. 587, it was held that the legislature might properly invest the county courts of the State with the power to appoint election commissioners under the City Election law, and in *People* v. *Board of Supervisors*, 223 Ill. 187, that the legislature might properly invest county boards of the State with power

to appoint election judges. If the power can be properly conferred upon the courts to appoint election commissioners and upon county boards to appoint judges of election, we can see no reason why the legislature may not confer the power upon the county judges of the State to appoint miners' examining boards for their respective counties. The power of the legislature to authorize county and circuit courts, or the judges thereof, to appoint various kinds of officers not belonging to the judicial department of the government has been recognized in the following cases: *People* v. *Morgan,* 90 Ill. 558; *People* v. *Loeffler,* 175 id. 585; *People* v. *Raymond,* 186 id. 407; *Sherman* v. *People,* 210 id. 552; *People* v. *Chetlain,* 219 id. 248.

Our conclusion is that the statute in question is not unconstitutional for the reason that the county judges of the State cannot be invested with the power to appoint the miners' examining boards.

It is next contended that the statute is unconstitutional by reason of the fact that it discriminates against such miners as were not actually employed in mining in this State on the date said statute became effective, and discriminates in favor of such miners as were actually employed in mining in this State on the date said statute became effective. The statute provides that no person shall receive a certificate permitting him to work in a coal mine in this State unless he shall have had two years' practical experience as a miner or with a miner, and provides that the examination required by the statute shall be taken by a miner unless the miner has been employed two years in practical mining and was actually employed in mining in this State at the time the statute went into effect. The question therefore is, has the legislature the right to exempt a miner from taking the examination who was actually employed in mining in this State on the date the statute became effective, as a prerequisite to issuing him a certificate, while if he were not so employed on the date the statute went into effect, to re-

quire him to take an examination? In other words, could the legislature make an exception in favor of the miner who was actually employed in mining coal in this State on the day the statute went into effect without making the statute unconstitutional on the ground that it was discriminatory legislation?

The legislature, in the exercise of the police power of the State, may undoubtedly prescribe regulations for securing the admission of qualified persons to all callings which demand special knowledge, experience and skill, and in no calling is there more imperious demand for experience, knowledge and skill than there is in that of mining coal. The miner works beneath the surface of the earth by the aid of artificial light, and is surrounded, while at work, by many dangers, and unless great precaution is observed to protect him from the negligence of the mine operator and the unskillfulness of his fellow-miners, a disaster may take place in the mine and without a moment's warning the mine be destroyed, together with all persons working therein; hence there has been placed upon the statute books of this State and of many other States, within a comparatively few years, legislation the object of which is to protect the miners from the negligent acts of the mine operator and mine owner, and obviously the object of the statute in question was to go a step further and protect the skilled workmen in coal mines, as far as possible, from the unskillfulness of unskilled labor in the mine. It is therefore clear this legislation was provided with a view to make safe, so far as possible, the mining of coal, and concerns the preservation of the health and the lives of all that class of men who are engaged in mining coal in this State, and the statute, according to the canons of constitutional construction, should be sustained unless it is clearly and palpably in violation of some provision of the constitution, State or national.

As we view the provision of the statute which exempts the miner from an examination if he was employed in min-

ing in this State at the time the statute went into effect, as
a pre-requisite to issuing him a certificate, it does not con-
fer upon such miner any privilege,· right or immunity and
does not discriminate in his favor as against the miner who
was not so employed at the time the statute became effect-
ive. The most that can be said is, that the statute leaves
the miner who has had two years' experience in mining coal
and was employed in mining coal in this State at the time
the statute went into effect,. in the precise situation that he
was in before the statute was passed,—that is, it permits him
to .continue his employment upon his satisfying the miners'
examining board that he had been for two years engaged in
mining coal and was engaged in mining coal in this State
at the time 'the. statute went· into effect. Neither does it
take from the miner who resides in this State or resides out
of this State, and who has had two years' experience in
mining, any privilege, right or immunity, but leaves such
miner where it found him when the statute was passed,—
that .is, without employment in a coal mine,—and if he
desires to again engage in mining, then the statute provides
that he may do so by passing an examination and otherwise
complying with the statute. In the one instance the law is
just to the miner who was employed when the law went into
effect, as it permits him to continue his employment, while
it does not in any way work an injustice to the miner who
has for years, or even temporarily, abandoned the mining
of coal and again desires to be employed in that calling.
We are therefore constrained to hold that the statute does
not discriminate in favor of the class of miners who were
. employed as miners when the act became effective or dis-
criminate against the class of miners who were not so em-
ployed when the act became effective.

In *Williams* v. *People,* 121 Ill. 84, the defendant was
prosecuted for a violation of an act regulating the practice
of medicine in the State of Illinois. The statute under
which he was prosecuted, among other things, provided.

"that the provisions of this act shall not apply to those that have practiced medicine within this State for ten years," and the constitutionality of the statute was attacked on the ground that the statute, by reason of that provision, amounted to discriminatory legislation and was void. The court held otherwise, and on page 88 of the opinion said: "This proviso does not confer upon the ten years' practitioners any special privilege, immunity or franchise. It does not confer upon them anything. It leaves them as they are." The case of *Kettles* v. *People,* 221 Ill. 221, is also in point.

It is further contended that the statute is discriminatory in this: that the qualifications required of the members of the miners' examining boards exclude from such boards all persons who are not practical, experienced and skillful miners of at least five years' continuous experience, and who are not, at the time of their appointment, actually engaged in mining coal in the county for which they are appointed. The right to be appointed or elected to an office is not a property right which is conferred upon the citizen by the constitution, but it is a privilege, and when an office is created by the legislature we think it may provide the qualifications which shall be required of the citizen to hold such office, and the fact that all of the citizens of the State do not possess all of the qualifications or requirements which may be necessary to hold such office does not make the statute creating such office and fixing the qualifications of the persons who may hold such office unconstitutional. The legislature had the power to provide, if it saw fit, that only practical, experienced and skilled miners of at least five years' continuous experience, who were then actually engaged in mining coal in the county for which they were appointed, should be qualified to act as members of the miners' examining boards, and by so doing no inhabitant of the State was discriminated against. The courts have nothing to do with the wisdom of a statute, and cannot declare a

statute unconstitutional by reason of the fact that it may be impolitic or unwise.

The further contention is made that the statute provides only for the appointment of miners' examining boards in counties where coal is mined, and that it also provides only for the examination of miners who reside in a county in which a miners' examining board is appointed, the result of which, it is urged, is to exclude from examination and certification all miners who reside outside of the State of Illinois, or who reside outside of a county in which coal is mined and in which a miners' examining board is appointed. This contention is based upon the language, "that the said board shall examine under oath all persons residing in the county in which said board resides who apply for certificates." A statute must have a reasonable construction. It need not, however, have a literal construction. This statute does not require members of the board to be appointed in the county in which they reside, but they must be "actually engaged in mining coal in the county for which they are appointed." It is apparent, therefore, that the "residence" of the board, referred to in the statute, means the place for which the members of the board may be appointed,—that is, in a county in which they are actually engaged in mining coal. It is usually true that the legislature will be deemed to have used a word in a statute, where it is used more than once, in the same sense, unless the context shows the word to have been used in the statute at different times in a different sense, and it is a rule of statutory construction that a court will not so construe a statute as to render it abortive or annul it, if such construction can be avoided. If the clause found in the statute, "shall examine under oath all persons residing in the county," is used in the same sense that the word "residence" is used in defining the qualification of the members of the miners' examining boards, the statute, if given a literal construction, would read, "shall examine under oath all persons who are actually engaged

in mining coal in the county where a miners' examining board had been appointed." If, however, the entire statute is given a liberal construction and with a view of not rendering it unconstitutional but with a view of rendering it valid, it should be so construed as to authorize the miners' examining board of any county in the State to examine all miners who reside in a county where no miners' examining board has been appointed, or who reside outside of the State and desire to be examined with the view of becoming employed in coal mining in this State and in the county in which the board to which application for examination was made had been appointed and was then in session, which construction would make the statute constitutional. In *People* v. *Harrison,* 191 Ill. 257, will be found a full discussion of the rules of statutory construction. If the rules of statutory construction announced in that case are applied to the Miners' Examining Board statute, then every miner, be he a resident or non-resident of the State or of the county where he makes his application for examination, who has had two years' experience in mining coal and desires to engage in mining in the county where he applies for examination, can take the examination and be granted a certificate and engage in mining coal in this State. We think the statute should be so construed, and when so construed it is not subject to constitutional objection.

It is also urged that the statute is unconstitutional by reason of the fact that it prohibits any person from entering a coal mine in this State unless he is selected, appointed or designated by some duly certificated miner, and it is said this will prohibit all persons in the State except those favored few who may be selected by certificated miners from becoming practical coal miners, and that such arbitrary discrimination in the selection of helpers or apprentices renders the act void. The portion of the statute upon which this contention is based is found in section 1, and reads as follows: "That any such certificated miner may have one

uncertificated person working with him and under his direction for the purpose of learning said business of mining and becoming qualified to obtain a certificate in conformity with the provisions of this act." We think the plaintiff in error misinterprets this section of the statute. Clearly the class of persons referred to as "uncertificated persons" are not to be selected and appointed by the certificated persons with whom they are to work and under whose direction they are to work, but such uncertificated persons must necessarily be employed by the persons who own and operate the mine and who are to pay them for their work. If the statute be thus construed the argument of the plaintiff in error upon this branch of the case is without force. We do not think the provision of the statute which provides for the employment of uncertificated persons in coal mines renders the statute unconstitutional.

It is finally contended that that portion of the statute which provides that money paid into the State treasury by the miners' examining board shall be paid out again upon warrants issued by the several county judges of the State is invalid. That this provision of the statute is unconstitutional is conceded by the defendant in error, and it is too plain for argument that the portion of the statute which authorizes a county judge to draw warrants against money in the State treasury must be held to be unconstitutional. The other provisions of the statute, however, are not dependent upon this provision, and, eliminating from the statute the portion admittedly unconstitutional, the remaining part of the statute is valid and constitutional.

Finding no reversible error in this record the judgment of the county court will be affirmed.

*Judgment affirmed.*